Filed 6/5/15 Certified for Publication 6/16/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANE J., | G051603 |
| Petitioner, | (Super. Ct. No. 14FL000058) |
| v. | O P I N I O N |
| THE SUPERIOR COURT OF ORANGE COUNTY, | |
| Respondent; | |
| CHRISTOPHER J., | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Debra C. Carrillo, Judge. Petition granted.

Law Offices of Marjorie G. Fuller and Marjorie G. Fuller for Petitioner.

No appearance for Respondent.

Hagan & Associates, Cara J. Hagan and Shannon C. Williams for Real Party in Interest.

\* \* \*

1

THE COURT:[*]

# I

## INTRODUCTION

We issue a peremptory writ in the first instance because respondent court erroneously issued a modification order changing custody to the noncustodial parent, thereby requiring the minor children to move in the middle of the school year from their California home to the noncustodial parent's home in Alabama. Respondent court abused its discretion by failing to consider the relevant factors, including the children's existing educational, physical, emotional and familial relationships with the custodial parent, and whether an out-of-state move-away would detrimentally affect their interests in continuity and stability.

# II

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Petitioner Jane J. (Mother) and real party Christopher J. (Father) are the parents of two boys, an older son, born in the fall of 2002, and a younger boy, born in January 2006.

The couple separated in 2006 and divorced in October 2009. At the time of the divorce, Mother lived in Wisconsin, with the two children. Father was an active duty pilot in the military, stationed in Hawaii.

Mother and Father agreed to a marital settlement, which was approved by a Wisconsin family court commissioner. The parents agreed to joint legal custody, but because of the family's "unique" situation, Mother was given 92 percent primary physical custody, with Father having 8 percent physical custody.

The agreement specifically recited that Father's military duties in Hawaii made "visitations with the boys limited and difficult," stressing the need "to exercise

---

[*] Before Aronson, Acting P. J., Ikola, J., and Thompson, J.

2

flexibility as much as we are able." "If [Father] has an opportunity to spend more time with the boys, it is encouraged. [Mother] will be as flexible as she is able at the time of the occurrence(s) enabling [Father] to spend more time with the boys."

The marital settlement agreement was signed by the Wisconsin family court commissioner and filed with the La Crosse County circuit court on October 22, 2009. As subsequently recited by the Wisconsin family court commissioner, "[t]he Parenting Plan was Father's plan and was signed by Mother."

Following the dissolution, Father was deployed in a medevac unit in Iraq and Afghanistan. Father's military assignments, including the three deployments to active military duty in the Middle East, "made it difficult for me to have the boys for their full summer breaks and only allowed me to have them when I was on vacation." Time differences and Father's military schedule combined to hamper his ability even to directly communicate with them.

In 2012, Mother and the children moved from Wisconsin to Orange County, where Mother was living with her fiancé. The Wisconsin court held a hearing and approved Mother's move-away.

Father returned to the United States and received transfer orders to Fort Rucker in Alabama. Newly remarried, he relocated there in December 2013.

In January 2014, Father registered the October 2009 Wisconsin custody order in California. In April 2014, he filed a request for order (RFO) to modify the 2009 Wisconsin custody order, either to increase visitation, or to give him primary physical custody over the boys. He also sought to modify the support amounts.

Mother opposed Father's RFO. She highlighted her "serious disagreements" with him concerning the children's future medical treatment and exact custody schedule, but asserted that she "does not have an issue working with [Father] regarding child custody and visitation."

3

The parties stipulated for Father to have summer visitation with the children on two separate occasions in the summer of 2014, and to enroll in Family Wizard for e-mail communication, and to attend mediation to work out a visitation schedule for the holidays. According to Father, he spent a total of 57 days during calendar year 2014 in visitation with the children.

On October 28, 2014, respondent court held an afternoon session on Father's RFO. The court considered Father's request to reduce child support, leaving "for another day" "the issues of crossed accusations about whether [Mother] blocked [Father] from seeing the children [and] whether [Father] has given the proper attention to following through on the medical needs." Respondent court entered a support order and continued the hearing until February 11, 2015.

Although the parties agreed to share the costs for an Evidence Code section 730 evaluator to make recommendations regarding the children's best interests, respondent court declined to appoint one.

On February 11, 2015, respondent court held the continued hearing on Father's RFO. The hearing lasted for 15 minutes in the morning and several hours in the afternoon.

Both Mother and Father briefly testified, primarily about Father's visitation experiences with the children in October 2014, and also during his weeklong visitation with them in Alabama over the Thanksgiving holiday and over Christmas.

Mother agreed that she and Father "needed a more structured visitation schedule. And because we didn't have that, it created a lot of problems." According to her counsel, "[t]he parties didn't have a written schedule, which has led to some conflict between the parties. There's no denying that."

Father's counsel argued for a change in custody because "[t]hese kids need to know that their father is important and involved in their lives and that even though

4

before whatever has happened, he is in a place where he can take them. He can give them stability."

At the conclusion of the hearing, respondent court expressed its doubts about Mother's willingness to facilitate Father's visitation with the children. "But I don't find [Mother] credible in stating that she would do anything she could for [Father] to see the children." "And it just seems like what I see as a chronic and consistent pattern of one parent blocking the other continually and incredulously even during the week that they came to court here and the day of [the October 28, 2014 hearing.] It just smelled fishy."

Respondent court determined that the 2009 Wisconsin custody order "wasn't a final order[] in any event." As a result, respondent court concluded that Father did not have to establish changed circumstances. "So I won't even have to say things have changed materially."

Respondent court concluded, "It's time [Father] had an opportunity to parent these children. I'm going to change custody. He needs to be given the opportunity to be the parent that he's striving to be in the limited time that he has."

Respondent court acknowledged that the February 11, 2015 order would require the children, then aged 9 and 12, to immediately change school in the middle of the school year. "It's not [Father's] position. It's my position." The court declined Mother counsel's request to defer the timing of any order until the end of the school year, and directed that its order take effect in four days, by February 16, 2015.

Respondent court made no orders regarding Mother's visitation rights other than a visitation over the children's second spring break in April 2015, with Father to pay for the children's visitation expenses "for this occasion only." Respondent court concluded by recognizing that "[t]hese children have two parents who love them very much. And I expect those two parents to start getting along really well in the future."

5

Mother filed a notice of the mandatory 30-day stay for out-of-state move-away orders in Code of Civil Procedure section 917.7.  In recognition of the Code provision and over Father's objection, respondent court stayed immediate removal of the children from California to Alabama.

Mother filed a timely petition for writ of mandate and a request for an immediate stay of respondent court's February 11, 2015 move-away order.

We issued a stay of the February 11, 2015 minute order "insofar as it awards physical custody of the minor children to Father."  We acknowledged respondent court's continuing authority to issue orders "concerning Father's visitation rights with the minor children," even if such visitation involved trips outside California, as well as other orders "to improve cooperation between the parents, or to assure the children have frequent and continuing contact with both parents, or other similar matters."

Our briefing order included a *Palma* notice, informing Father that we were considering issuing a peremptory writ in the first instance.  (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 179; see also *Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233.)  Following the *Palma* notice, Father filed an informal response, and Mother filed a reply.

III

DISCUSSION

Respondent court has discretion to modify an existing custody order based on changed circumstances, or to grant or deny a move-away request.  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)  This discretion may be abused by applying improper criteria or by making incorrect legal assumptions.  (*Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1124-1125 [reversing postjudgment order regarding move-away request].)

As we explain below, it appears respondent court's decision to abruptly change custody from Mother to Father was influenced by an erroneous understanding of

6

the applicable law.  Respondent court discounted Father's initial burden, as the moving noncustodial parent, to address the potential disruptive impact of an out-of-state move-away, including its effect on the children's existing educational, physical, emotional and familial relationships.  Move-away orders are "'one of the most serious decisions a family law court is required to make,' and should not be made 'in haste.'"  (*In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116, 1119 (*Seagondollar*).)

> A.  *Father, as the Noncustodial Parent, Has the Burden to Establish a Substantial Change in Circumstances Affecting the Children.*

This is not an initial custody determination, where the family court has the "widest discretion" to make a de novo determination of the parenting plan that is in the best interest of the children.  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31-32 (*Burgess*).)  Neither is this a situation where the parents, pursuant to a final custody order, have shared physical and legal custody of the minor children.  (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 362-363 [parents shared 50-50 division of physical custody time]; see also *Seagondollar, supra,* 139 Cal.App.4th at p. 1119.)

To the contrary, there is a custody order entered nearly six years ago in Wisconsin awarding joint legal custody to both parents, but awarding physical custody of the children solely to Mother.  The parties' post-dissolution conduct shows that they intended for the October 2009 Wisconsin custody order to be a final judgment as to custody; this was not a court-approved stipulation for temporary custody.  (See *Montenegro v. Diaz* (2001) 26 Cal.4th 249.)  Father registered the custody order in the Orange County superior court and filed a declaration under the Uniform Child Custody Jurisdiction and Enforcement Act.

Therefore, as the noncustodial parent seeking a change of the existing custody order, Father has the initial burden to make a substantial showing of changed circumstances affecting the children to change the final custody determination of the

7

Wisconsin court. (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1073, 1088-1089 (*LaMusga*); *Burgess*, *supra*, 13 Cal.4th at p. 38.)

"""It is settled that to justify ordering a change in custody there must generally be a persuasive showing of changed circumstances affecting the child. [Citation.] And that change must be substantial: a child will not be removed from the prior custody of one parent and given to the other 'unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change.' [Citation.] The reasons for the rule are clear: 'It is well established that the courts are reluctant to order a change of custody and will not do so except for imperative reasons; that it is desirable that there be an end of litigation and undesirable to change the child's established mode of living.' [Citation.]""" (*Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 738 (*Christina L.*).)

In filing his RFO, Father acknowledged his burden under the changed circumstance rule. He stated, "Modification of a custody order must be based on a significant change of circumstances so affecting the child that modification is essential to the child's welfare. The 'changed circumstances' rule is an adjunct of the statutory 'best interests' test for determining child custody. [Citations.] It furthers the paramount goal of preserving the need for continuity and stability in custody arrangements, unless some significant change in circumstances indicates a different arrangement would be in the child's best interest."

It is not enough to argue that it is time to switch sides to give the other parent the opportunity to take control. (*In re Marriage of Brown & Yanna* (2006) 37 Cal.4th 947, 956.) "When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role." (*Burchard v. Garay* (1986) 42 Cal.3d 531, 536 (*Burchard*).) This principle avoids an endless round of emotionally and financially draining litigation in the family law courts. (*Id.* at p. 536.)

8

In *Speelman v. Superior Court* (1983) 152 Cal.App.3d 124, 127-128 (*Speelman*), the family law court ordered a change in physical custody for a six-year old child from the father in Massachusetts to the mother in California based on the court's "'gut reaction'" that "'it's appropriate for the interests of the child to give him a chance to succeed with his mother at this time. And if it doesn't work out, in a year from now we can always find that we've made a mistake.'"

The appellate court in *Speelman* issued a writ of mandate to compel the family court to vacate this order, notwithstanding the court's determination regarding best interests. "'[A]lthough a request for a change of custody is also addressed in the first instance to the sound discretion of the trial judge, he [or she] must exercise that discretion in light of the important policy considerations just mentioned. For this reason appellate courts have been less reluctant to find an abuse of discretion when custody is changed than when it is originally awarded, and reversals of such orders have not been uncommon.'" (*Speelman*, *supra*, 152 Cal.App.3d at p. 129; see also *Christina L., supra,* 229 Cal.App.4th at p. 738.)

Applying similar principles in the related area of guardianships, this court reversed an order terminating a long-term guardianship because of the failure of moving party to counter "the inherent trauma of removing a child from a successful caregiver." (*Guardianship of Kassandra H.* (1998) 64 Cal.App.4th 1228, 1231.)

> B.  *Father Has the Additional Burden to Establish That an Out-of-State Move-Away Order Will Not Cause a Detriment to the Children and Is In Their Best Interests.*

Father argues that his evidence of changed circumstances (primarily based upon Mother's inflexible approach to his visitation efforts) represents the end of the story, and requires this court to defer to respondent court's discretionary determination about the children's best interests: "[I]t has been routinely held that conduct by the

9

custodial parent designed to frustrate visitation and communication between the child and other parent may constitute ground for changing custody. [Citations.]"

Father dismisses as irrelevant the fact that a change in custody requires the children to relocate some two thousand miles from Orange County to Alabama. "It cannot be automatically presumed that the children will suffer some form of harm, let alone irreparable harm, simply because they will be living in a new state with their father." According to Father, "[t]his is not a move away case" because Father "*already* lives in another state and custody is changed to that parent."

We disagree. "A proposed change in the residence of a child can run the gamut from a move across the street to a relocation to another continent." (*LaMusga*, *supra*, 32 Cal.4th at p. 1096.)

Because Father is not the custodial parent, he does not have a presumptive right to relocate the children to another region of the country simply because he acts in good faith and for a legitimate reason. Instead, as the noncustodial parent who seeks a change in custody involving an out-of-state move away, Father bears additional burdens of persuasion as part of the changed circumstances standard. (*Speelman*, *supra*, 152 Cal.App.3d at pp. 129-130.)

A move should not be allowed where it would be "'detrimental to the child.'" (*Burgess*, *supra,* 13 Cal.4th at p. 35.) As *LaMusga* itself noted, "'the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining ongoing custody arrangements. [Citations.]'" (*LaMusga*, *supra*, 32 Cal.4th at p. 1093.)

In *LaMusga,* the Supreme Court recognized the noncustodial parent who seeks the change in primary physical custody bears the initial burden of proof regarding the proposed move-away. Unlike here, the custodial parent in *LaMusga* wanted to move the children away from their existing home in California to Ohio. To prevent the move-

away and keep the children in California, the noncustodial parent requested a transfer of physical custody. Since the noncustodial parent bore the initial burden of showing detriment, the Supreme Court obliged him to prove detriment to the children from the planned move. The Supreme Court affirmed the custody change order precisely because the noncustodial parent met his initial burden "that a relocation of the children out of the State of California, the distance of 2000 miles is—would inevitably under these circumstances be detrimental to their welfare." (*LaMusga*, *supra*, 32 Cal.4th at p. 1085.)

Here, in contrast, it is Father, as the noncustodial parent, who seeks to upend the status quo by compelling both a change in custody and a move-away. His standard of proof to impose what amounts to a double-barreled change "is admittedly very high." (*In re Marriage of Campos* (2003) 108 Cal.App.4th 839, 843.)

At a minimum, this requires a balancing of the children's current situation in California and their proposed new situation in Alabama, with the substantial burden of showing a change of circumstance imposed upon Father, as the noncustodial parent, to establish that the children will not sustain detriment by the proposed move, and that the out-of-state move-away will serve their best interests. (See *Burgess*, *supra,* 13 Cal.4th at p. 39.)

Here are some of the factors a family law judge should consider in evaluating a noncustodial parent's move-away request: the children's ages (and, if age appropriate the children's wishes); community ties; health and educational needs, the attachment and past, present and potential future relationship of the children with each parent; the anticipated impact of the move upon the children's existing social, educational and familial relationships; and each parent's willingness to facilitate frequent, meaningful and continuing contact to the other parent. (See discussion in *LaMusga*, *supra,* 32 Cal.4th at p. 1101, and cases cited therein; see also Philip M. Stahl, *Emerging Issues in Relocation Cases* (2013) 25 J. Am. Acad. Matrim. Law 425, 426.)

11

This list of factors is not exhaustive. "[W]e recognize that bright line rules in [child custody cases] are inappropriate: each case must be evaluated on its own unique facts." (*Burgess, supra,* 13 Cal.4th at p. 39.) "[T]his area of law is not amenable to inflexible rules." (*LaMusga*, *supra*, 32 Cal.4th at p. 1101.)

Father complains Mother did not identify the "purported irreparable harm" that would result if the children were to be moved to Alabama with their father. In doing so, Father impermissibly seeks to shift the burden of proof to Mother, the custodial parent and the nonmoving party. "As the noncustodial parent with visitation rights, [Father] carries the burden of proving [retaining custody with Mother] is not in [the minor child's] best interests; the burden is not on [Mother] to prove the contrary." (*In re Marriage of Abargil* (2003) 106 Cal.App.4th 1294, 1298-1299.)

C.     *Respondent Court Abused Its Discretion in Failing to Consider the LaMusga Move-Away Factors in Conjunction With Its Ruling on Father's Request for an Out-of-State Custody Change.*

Respondent court abused its discretion in ordering a change in the existing custody arrangement, with its attendant out-of-state move-away, without considering the relevant *LaMusga* factors. Respondent court acted precipitously in issuing its February 11, 2015 move-away order and failing to weigh, in the context of Father's substantial burden to show changed circumstances and best interests, the disruption to the children from losing their existing home, school and support structure against the potential benefits from an out-of-state relocation. (See *Speelman*, *supra*, 152 Cal.App.3d at pp. 129-130 [writ issued]; see also *In re Marriage of McLoren* (1988) 202 Cal.App.3d 108, 116 [family court abused its discretion in changing custody from sole to joint legal custody in the absence of a showing of substantially changed circumstances].)

Nothing in the record shows that respondent court weighed the children's paramount interests in the stability and continuity of their current custodial arrangement, or gave due consideration to the children's existing relationships and living situation.

12

Respondent court never mentioned the potential harm to the children from losing Mother as their primary caretaker. As Mother argued in her writ petition: "The trial court did not consider any evidence showing detriment to the children from the loss of contact to their mother, their school, their friends, their accustomed place of residence, their doctors, their therapists."

Respondent court missed an opportunity to obtain expert guidance when it rejected the parents' stipulation to share in the costs to retain and use an Evidence Code section 730 evaluator to analyze the matter and to make recommendations for custody and visitation. "A 'child custody evaluation' is an expert investigation and analysis of the health, safety, welfare, and best interest of children with regard to disputed custody and visitation issues." (Cal. Rules of Court, rule 5.220(c)(3).)

Respondent court was concerned that, absent a change of custody, Mother would continue to interfere with the children's relationship with Father. Much of the testimony at the hearing was devoted to Father's visitation experience during his weeklong trip to California in October 2014 (when Mother "gave the most limited amount of time possible, and then when [Father] didn't do exactly as she said, refused to allow him to exercise even the scant visitation promised), as well during a Thanksgiving visitation with Father in November 2014 (when Mother insisted "that one child complete an extensive [and overdue] school project . . . because she had not seen that it was completed [before the trip] . . . .").

According to Father, Mother's "unrelenting pattern of frustrating" Father's visitation rights, coupled with findings that Father was more likely to permit [the children's] frequent and continuing contact with [the] noncustodial parent, 'alone provided adequate grounds for changing custody' to Father."

It is certainly true that one of the key factors the court should address as grounds for modifying custody is the custodial parent's deliberate efforts to impair the children's frequent and continuing contacts with the noncustodial parent. (See

13

*Burgess*, *supra*, 13 Cal.4th at p. 36, fn. 6; *Speelman*, 152 Cal.App.3d at p. 132.) But it is equally important, in weighing all the relevant circumstances, for the family law court to assess whether the noncustodial parent is as likely to hamper visitation should formal custody be switched. (*Burchard*, *supra*, 42 Cal.3d at pp. 540-541.)

In *Burchard*, the trial court changed custody of a two and one-half year old child from the mother to the father based in part upon its determination that the mother, who had been the child's primary caretaker, had been unwilling to provide visitation to the father; the court determined that the father was "'better equipped psychologically'" to care for the child. In reversing the custody order for abuse of discretion, the California Supreme Court noted that "after [the father] obtained custody pursuant to the trial court's order, he proved equally obdurate to [the mother's] visitation rights, leading the court to amend its order to spell out those rights." (*Id.* at pp. 540-541.)

Here too, as in *Burchard*, Mother cites her own difficulties in seeking visitation with the children in the immediate weeks after respondent court's February 11, 2015 move-away order when physical custody was transferred to Father. "[Father's] behavior in refusing to allow [Mother] and the children any time together in the 30 days between his assumption of custody and the proposed move to Alabama . . . illustrates the problems that are likely to be exacerbated if the children move with him."[1]

_____

[1] Father disputes some aspects of [Mother's] claims regarding his conduct after he was granted sole physical custody in the February 11, 2015 order: "[Mother's] statement in the Petition that [Father] refused to give [her] the address where he and the children would be staying . . . during the 30 day stay period . . . is blatantly false."

We do note, however, that Father's opposition to the writ petition harshly attacks virtually all of Mother's parenting skills. Father, for instance, claims Mother has placed the children's health and safety at risk, failed to address their emotional and educational needs, feeds their classmates doughnuts while insisting the boys remain on a gluten-free diet, and is motivated as much by financial concerns to retain "her last bit of financial aid from [Father]," thereby preserving her life style. Father justifies respondent court's

14

To the extent respondent court considers evidence regarding frustration of visitation rights, respondent court should assess and consider the co-parenting abilities of *each parent* to communicate and work with the other parent to facilitate contact between the child and the distant parent.

The parents' charges and counter-charges heighten the toxic and corrosive effect of protracted and open-ended litigation regarding custody changes. "Someone once noted that in criminal cases you see bad people at their best and in custody cases you see good people at their worst." (W. Dennis Duggan*, Rock-Paper-Scissors: Playing the Odds with the Law of Child Relocation* (2007) 45 Fam. Ct. Rev. 193, 194.)

In this context, respondent court should consider whether judicial remedies other than a change in custody will further continuous and enduring relationships between the children and both parents without disrupting the children's interests in continuity and stability. It well may be that clearly defined visitation orders, with an enhanced allocation of time to Father, may obviate time-consuming and disruptive litigation. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1072; *Enrique M. v. Angelina V.* (2004) 121 Cal.App.4th 1371, 1379-1380.) "The trial court has broad discretion to modify orders concerning contact and visitation to minimize the minor children's loss of contact and visitation with the noncustodial parent." (*Burgess*, *supra*, 13 Cal.4th at p. 40.)

---

abrupt custody change order as necessitated by the "significant danger" of Mother's "vindictiveness" and an "emergency situation" to the older child's health. Father posits: "It can only be imagined what damage [Mother] might attempt to inflict if the children were left in her care *after* custody was modified."

Such hyperbole causes us to question whether Father, left to his own devices, would take a more facilitative approach to visitation than has Mother. The foregoing illustrates the difficulties family law courts face in resolving custody disputes between uncooperative parents. It also underscores the usefulness of a neutral evaluator or a clearly defined parenting plan (or both), in providing guidance to the court and the parents.

15

During the pendency of these writ proceedings, respondent court has begun to implement specific visitation orders to reintroduce Father into the children's lives to the fullest extent possible given the geographic distances, the children's ages and other criteria. Respondent court should take into account any insights gained from such experiences, as well as additional circumstances bearing on the best interests of the children that may have developed during the pendency of these writ proceedings and afterwards.

D. *A Peremptory Writ in the First Instance is Appropriate.*

Respondent court issued the February 11, 2015 change of custody order in the middle of the school year, abruptly giving Mother only four days, or until February 16, in which to pull the children from their classes and somehow prepare them to be uprooted and relocated to Father's home and family in Alabama.

While respondent court subsequently (and correctly) recognized the 30-day automatic stay in Code of Civil Procedure section 917.7, the need for immediate action remains because of the impact of the February 11, 2015 change of custody order on the children's interests in stability and community in retaining their existing custodial relationship with Mother, who has primary physical custody pursuant to the October 2009 Wisconsin custody order.

"Children live in the present tense, and 'temporary' relocations may have a severe and pernicious impact on their well-being and sense of security." (*Andrew V. v. Superior Court* (2015) 234 Cal.App.4th 103, 109 (*Andrew V.*). "There is a particular need to accelerate the writ process in child custody disputes where children grow up quickly and have immediate needs." (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1057; see also *San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 225 [issuing peremptory writ in first instance in dependency proceeding in recognition of children's needs for certainty and permanency in stable home settings].)

16

Mother filed her writ petition on March 10, 2015. We issued a *Palma* notice on March 11, 2015, inviting Father to file a response within 15 days and to address the advisability of issuing a peremptory writ in the first instance. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 179 (*Palma*); see also *Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233.) Father timely filed a 25-page opposition, which we have read and considered, as well as the two-volume reporter's transcript of the hearings on October 29, 2014 and February 11, 2015. This procedure complies with the statutory and case law requirements for the issuance of peremptory writs in the first instance. (Code Civ. Proc., § 1088; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1240 (*Lewis*).)

Because "petitioner's entitlement to the relief requested is so obvious that no purpose could be served by plenary consideration of the issue," we issue a peremptory writ of mandate in the first instance. (*Lewis*, *supra,* 19 Cal.4th at p. 1260.) Prompt disposition under the accelerated *Palma* procedure will enable respondent court to exercise its reasoned discretion to fashion appropriate visitation and custody orders under correct legal principles, and considering all the pertinent factors.

IV

DISPOSITION

Let a peremptory writ of mandate in the first instance issue directing respondent court to vacate its order of February 11, 2015 granting Father physical custody of the minor children and requiring that they move away from their California residence with Mother to the state of Alabama, where Father resides. Respondent court shall conduct further proceedings regarding appropriate visitation and custody orders in accordance with this opinion. The temporary stay shall be lifted upon the finality of this opinion as to this court.

The parties shall bear their own costs in conjunction with this writ proceeding.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JANE J., | G051603 |
| Petitioner, | (Super. Ct. No. 14FL000058) |
| v. | ORDER GRANTING REQUEST FOR PUBLICATION |
| THE SUPERIOR COURT OF ORANGE COUNTY, | |
| Respondent; | |
| CHRISTOPHER J., | |
| Real Party in Interest. | |

THE COURT:[*]

Attorneys Eric D. Mackey-Fitzgerald, Jim P. Mahacek, Patrick E. Smith and William F. Zulch have separately requested that our opinion, filed on June 5, 2015, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The requests are GRANTED.

ARONSON, ACTING P. J.

---

[*] Before Aronson, Acting P. J., Ikola, J., and Thompson, J.