Filed 4/11/25  A.S. v. D.S. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| A.S., | B328086 |
| Appellant, | (Los Angeles County Super. Ct. No. 17PSFL01164) |
| v. | |
| D.S., | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, H. Don Christian, Juvenile Court Referee. Affirmed.

Galperin & Hensley and Yury Galperin for Appellant.

Castellanos Law Group and Patricia Saucedo for Respondent.

_____

# INTRODUCTION

Mother A.S. appeals from the family court's orders granting father D.S.'s request for a move away order and for primary custody of their child, Mason S.  The family court erred by granting the initial move away order on an ex parte basis based on reasons that did not meet the statutory standard under Family Code section 3064.  Under the circumstances presented, however, we affirm because at the subsequent contested hearing the court applied the correct standard and did not take into account its prior ex parte ruling.  Further, A.S. has not met her burden to demonstrate prejudicial error arising from the ex parte order, or that the family court abused its decision by granting the move away order after the contested hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Background*

A.S. and D.S. married in 2015, and Mason was born in 2016.  The parents separated in 2017 and their stipulated judgment of dissolution was filed in July 2019.  The judgment specified A.S. and D.S. had joint legal and physical custody of Mason.  Both resided in Southern California at the time of the dissolution.

On January 31, 2020, D.S. filed a request for an order to give D.S. primary physical custody of Mason and for permission to move to Texas with Mason.  D.S. believed they would enjoy a lower cost of living there, and he anticipated a job offer from the Dallas Police Department.  The parties stipulated to the appointment of an expert pursuant to Evidence Code section 730 who would make recommendations about the move away request.

The family court had previously appointed counsel to represent Mason, and minor's counsel participated in the move away proceedings.

On January 27, 2021, the family court conducted a contested hearing on D.S.'s request. The expert testified the ideal arrangement for Mason would be both parents living in close proximity to one another because it would be difficult for a four-year-old child to travel that distance and be away from either parent for extended periods of time. If, however, D.S. were to move, the expert recommended A.S. be granted primary physical custody of Mason with D.S. receiving his custodial time with Mason during school holidays and in the summer. The expert explained both parents were "good parents" but she believed Mason was "a little bit more attached to mom."

The court adopted the expert's recommendation and denied D.S.'s move away request. The court ordered custody to remain the same if D.S. chose to stay in Southern California but it also set out a detailed custody schedule if D.S. chose to move away. D.S. relocated to Texas soon after the hearing.

B.     *The Ex Parte Request*

On August 26, 2022, D.S. moved for an ex parte order "resetting" the move away request and for further review by the court-appointed expert. In his declaration in support of the ex parte motion, D.S. stated he learned A.S. intended to move in with her boyfriend and enroll Mason in a different school in a different school district. According to D.S., Mason told D.S. a "few" times that he was scared of A.S.'s boyfriend. D.S. asserted Mason had a few instances of wetting himself at school and at home, causing A.S. to take him to the doctor. D.S. also relayed

that A.S. violated court orders by changing Mason's doctor without D.S.'s consent, referring to D.S. by his name rather than as "daddy" when speaking with Mason, failing to ensure D.S. spoke to Mason by video every day, and seeking to encroach on D.S.'s custody time with Mason.

A.S. opposed the ex parte motion, arguing Mason "is not in harm's way, started school August 8th, Mason is loving his school, [and] also started Pop Warner football this month."

The family court granted D.S.'s ex parte request on August 26, 2022, the day D.S. filed his request, and set a contested hearing for the following month, which was later continued to November. The court appointed the same expert to review the new move away request. D.S. relocated Mason to Texas and enrolled him in school there. The record does not reflect A.S. sought a stay of the family court's order granting the ex parte motion or appellate review.

C. *The Contested Hearing*

On November 28 and 29, 2022, the court conducted the contested hearing. The previously-appointed expert recommended Mason be placed with D.S. in Texas, with D.S. as his primary custodian but with both parents retaining joint legal custody. The expert testified she did not take into account that Mason was already with D.S. in Texas as the sole basis in making her recommendation. She further testified that she primarily focused on the 16-month period between the first move away request in January 2021 and the second request in August 2022, but she "also did focus a bit on past incidents." She again testified the parents were both good parents but had difficulty working together as a team and communicating effectively. She

4

explained it was a "very close call" but she examined the factors identified in *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*), and in rendering her opinion she selected the parent who seemed most likely to facilitate the other parent's custodial time.

In her written opposition, A.S. disputed D.S.'s assertions, arguing they lacked evidentiary support. She stated her boyfriend moved to be nearer to his own daughter and she does not live with him. A.S. stated she lived with her mother and brother while staying at her boyfriend's home on the weekends. She affirmed she changed Mason's school so he would be closer to her new workplace. The change was approved by Mason's counsel after D.S. failed to reply to A.S.'s attempt to contact him. She also disputed that Mason was afraid of her boyfriend, stating he and Mason had a bonded relationship, and that D.S. had not previously raised this issue with her. She further stated she did not refer to D.S. by his name when speaking to Mason, and she supported Mason's relationship with his father.

At the hearing, A.S. testified regarding her daily routine with Mason when she was his primary caregiver. A.S. further testified Mason was attached to her, and he tells her he misses her every day since he moved to Texas. A.S. explained she did not intend to infringe on D.S.'s custody time but she wanted to take Mason on a family trip to Mexico, and D.S. would not work with her to change the custody schedule.

A.S.'s counsel argued Mason's "paramount" need for stability and continuity was fulfilled by remaining in California, where Mason had lived since birth. She further argued the harm that could result from the disruption to Mason's patterns of care and emotional bonds weighed heavily in favor of maintaining the

current custody arrangement where A.S. was the primary custodian and to whom Mason was very attached.

D.S. submitted on his papers and the expert's evaluation. Mason did not testify at the hearing. Mason's attorney in closing arguments stated she had spoken to Mason, who indicated he was equally happy living with his father or mother. She further stated A.S. and D.S. would benefit from conjoint therapy to help them advance their communication skills. She agreed with the expert that primary custody should be granted to D.S.

The family court granted D.S.'s move away request, adopting the expert's recommendation and finding the request to be in Mason's best interest. The court set out a detailed custody schedule in which A.S. had visits with Mason during the summer, school holidays, and one weekend per month during the school year. The court also ordered A.S. and D.S. to participate in at least six sessions of conjoint counseling. Mason's attorney was ordered to continue her representation of him, with monthly phone calls to monitor his wellbeing for one year. A.S. timely appealed.[1]

---

[1]	The family court stated its ruling was "not a final order under the case of *Montenegro vs. Diaz*." In light of the court's statement, on appeal "this court is obligated to review the question of appealability." (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1292.) We conclude the superior court's order is an appealable order after final judgment because Mason was removed from A.S.'s physical custody and the court granted D.S.'s move away request after a contested hearing with no further issues to be determined. (See Code Civ. Proc., § 904.1, subd. (a)(2); *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 253-254 [exercising jurisdiction over an appeal taken from an order entered after a contested hearing on custody]; see also *Critzer v.*

# DISCUSSION

A.S. raises two principal arguments on appeal. First, she contends the family court erred by granting D.S.'s ex parte motion without sufficient evidence of "immediate harm" as required under Family Code section 3064.[2] Second, A.S. argues the family court compounded its initial error by granting D.S.'s move away request, purportedly based on the ex parte order. We conclude the court did not abuse its discretion when it granted primary custody to D.S. after a contested hearing and allowed Mason to relocate permanently to Texas based on the recommendations of the court-appointed expert and minor's counsel.

## A.    *Standard of Review*

"The standard of appellate review of custody and visitation orders is the deferential abuse of discretion test." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 (*Burgess*); accord, *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255 (*Montenegro*).) "[W]e must uphold the [family] court 'ruling if it is correct on any basis, regardless of whether such basis was actually invoked.'" (*Montenegro*, at p. 255.) A court may abuse its discretion by applying improper criteria or making incorrect legal assumptions. (See *Mark T. v. Jamie Z.* (2011) 194 Cal.App4th

_____

*Enos* (2010) 187 Cal.App.4th 1242, 1251-1252 ["where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final"].)

[2]    All further statutory references are to the Family Code unless otherwise specified.

7

1115, 1124-1125.) We apply the substantial evidence standard to the court's factual findings. (See *Burgess,* at p. 32; *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497.)

B. *The Ex Parte Move Away Request Failed To Establish Immediate Harm*

Section 3064 provides in pertinent part: "The court shall refrain from making an order granting or modifying a custody order on an ex parte basis unless there has been a showing of immediate harm to the child or immediate risk that the child will be removed from the State of California." Section 3064, subdivision (b)(1), defines "'Immediate harm to the child'" as including, but not limited to, acts of domestic violence and sexual abuse of the child. The statute further directs the court to consider a parent's illegal access to firearms and ammunition as a basis for determining whether there is a showing of immediate harm to the child. (§ 3064, subd. (b)(2)(A).)

A.S. argues the family court erred when it granted D.S.'s ex parte request because there was no showing of immediate harm or an immediate risk that Mason would be removed from the state of California. On appeal, D.S. does not address the propriety of the ex parte order. He asserts the court's subsequent permanent custody order should be affirmed "[e]ven assuming, *arguendo,* that the Trial Court erroneously granted Respondent's Ex parte Application on August 26, 2022."

Here, the allegations in D.S.'s ex parte request fail to disclose acts of domestic violence, sexual abuse, or anything similar. Nor did the family court explain the immediate harm that Mason would suffer if it did not grant the ex parte request. Nevertheless, we conclude that "even if Mother were correct that

8

the court should not have granted custody to Father ex parte, she suffered no ultimate prejudice as the same result was supported by the record at the full evidentiary hearing." (*In re Marriage of Slayton & Biggums-Slayton* (2001) 86 Cal.App.4th 653, 658.) A.S. received a full evidentiary hearing, where she was represented by counsel and testified. Additionally, the court-appointed expert presented updated recommendations, and her attorney was able to cross-examine the expert. As we discuss in the next section, the family court did not abuse its discretion by granting the move away request after the contested hearing. Under these circumstances, there was no prejudicial error requiring reversal.

C.     *The Court Did Not Abuse Its Discretion by Granting the Move Away Request After the Contested Hearing*
        1.     *The Law Governing Move Away Requests*
        "Under California's statutory scheme governing child custody and visitation determinations, the overarching concern is the best interest of the child." (*Montenegro, supra,* 26 Cal.4th at p. 255; §§ 3011, 3040.) In determining the best interest of the child, section 3011 directs the court to consider "all relevant factors, including the child's health, safety, and welfare, any history of abuse by one parent against any child or the other parent, and the nature and amount of the child's contact with the parents." (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955-956.)

        "'[O]nce it has been established that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some significant change in

9

circumstances indicates that a different arrangement would be in the child's best interest.  The rule thus fosters the dual goals of judicial economy and protecting stable custody arrangements.'" (*Montenegro, supra*, 26 Cal.4th at p. 256, quoting *Burchard v. Garay* (1986) 42 Cal.3d 531, 535; *Burgess, supra*, 13 Cal.4th at p. 38.)  The noncustodial parent has a substantial burden to show changed circumstances.  (*Burgess,* at p. 38.)

The California Supreme Court in *LaMusga, supra,* 32 Cal.4th at page 1101 stated that, "we must permit our superior court judges . . . to exercise their discretion to fashion orders that best serve the interests of the children in the cases before them.  Among the factors that the court ordinarily should consider when deciding whether to modify a custody order in light of the custodial parent's proposal to change the residence of the child are the following:  [1] the children's interest in stability and continuity in the custodial arrangement; [2] the distance of the move; [3] the age of the children; [4] the children's relationship with both parents; [5] the relationship between the parents including, but not limited to, their ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests; [6] the wishes of the children if they are mature enough for such an inquiry to be appropriate; [7] the reasons for the proposed move; and [8] the extent to which the parents currently are sharing custody."  *LaMusga* held, "The likely consequences of a proposed change in the residence of a child, when considered in the light of all the relevant factors, may constitute a change of circumstances that warrants a change in custody, and the detriment to the child's relationship with the noncustodial parent that will be caused by the proposed move, when considered in light of all the

10

relevant factors may warrant denying a request to change the child's residence or changing custody." (*Id.* at p. 1097.)

Courts have applied *LaMusga* to cases involving a noncustodial parent like D.S.[3] who seeks both primary custody and a move away order, "what amounts to a double-barreled change." (*Jane J. v Superior Court* (2015) 237 Cal.App.4th 894, 905 (*Jane J.*); accord, *In re Marriage of C.T. & R.B.* (2019) 33 Cal.App.5th 87.) In those cases, the noncustodial parent bears a burden of proof different from that of a custodial parent seeking a move away order. *Jane J.* explained, "Because Father is not the custodial parent, he does not have a presumptive right to relocate the children to another region of the country simply because he acts in good faith and for a legitimate reason. Instead, as the noncustodial parent who seeks a change in custody involving an out-of-state move away, Father bears

---

[3] Generally, in cases involving joint custody, the party seeking a move away order need not demonstrate changed circumstances because the family court makes its custody determination de novo based on what is in the best interest of the child. (*Burgess, supra,* 13 Cal.4th at p. 40, fn. 12; *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 364.) Here, neither party contends the joint custody order in the 2019 judgment of dissolution is the operative order from which D.S. sought a change in custody. D.S. concedes the 2021 order denying his initial move away request "fundamentally changed the status quo [because] [A.S.] was granted primary custody of the minor child in California" when he moved to Texas. Under these circumstances, we conclude *LaMusga*'s changed circumstances analysis applies. (See *Jane J., supra,* 237 Cal.App.4th 894.) Both parties agree D.S. had the burden to prove changed circumstances at the November 2022 move away hearing.

11

additional burdens of persuasion as part of the changed circumstances standard." (*Jane J.,* at p. 904.)

Here, this requires "a balancing of the children's current situation in California and their proposed new situation in [Texas], with the substantial burden of showing a change of circumstance imposed upon Father, as the noncustodial parent, to establish that the children would not sustain detriment by the proposed move, and that the out-of-state move away will serve their best interests." (*Jane J., supra,* 237 Cal.App.4th at p. 905.) The noncustodial parent must demonstrate these changed circumstances based on the *LaMusga* factors.  (See *ibid.*)

2.    *Analysis*

A.S. contends the family court abused its discretion by "confirm[ing] its ex parte order without properly considering the relevant case law."  In A.S.'s view, the court simply adopted the expert's recommendation without considering the *LaMusga* factors.  A.S. contends the *LaMusga* factors "heavily" favored the denial of the move away and she disputes D.S.'s reasons for the change in custody were supported by evidence.

The record does not support A.S.'s assertion the family court failed to consider *LaMusga.*  To the contrary, the court stated, "This [case] is about the requirements of *LaMusga,* a move-away case in reality, and the parents not going to live in the same location."  The court-appointed expert also testified she considered the *LaMusga* factors in her evaluation.  The expert submitted a 17-page updated report addressing all the *LaMusga*

factors.[4]  Additionally, there is no indication the court granted
D.S.'s move away request based on its ex parte order.  The court
conducted a full contested hearing within a few months of its ex
parte order.  It made no mention of the ex parte order or of
Mason's relocation to Texas in its ruling.  It adopted the
recommendation of the expert, who testified she did not place any
particular emphasis on the ex parte order in her evaluation.
Under these circumstances, A.S. has not demonstrated the court
abused its discretion by applying improper criteria or by making
incorrect legal assumptions.  (See *Mark T. v. Jamie Z., supra,*
194 Cal.App.4th at pp. 1124-1125.)

On the merits, A.S. has not met her burden on appeal to
demonstrate the court committed reversible error by granting
D.S.'s move away request.  (See *Aguayo v. Amaro* (2013)
213 Cal.App.4th 1102, 1109 ["'We presume the trial court's
factual findings are supported by the evidence, and it is the
appellant's burden to show that they are not.'"]; *In re Marriage of
Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1484 ["It is a
fundamental rule of appellate review that a judgment is
presumed correct and the appealing party must affirmatively
show error."].)  Here, we are guided by well-established rules of
appellate review.  We presume the family court's ruling granting
the move away order after the contested hearing is correct.  (See
*LaMusga, supra,* 32 Cal.4th at p. 1093; *In re Marriage of*

---

[4]     We asked the parties to lodge with the court the exhibits
from the contested hearing, including the expert's supplemental
report.  We take judicial notice of the expert's supplemental
report on our own motion.  (See Evid. Code, § 452; see also *In re
Marriage of Wilson & Bodine* (2012) 207 Cal.App.4th 768, 770,
fn. 1.)

*Arceneaux* (1990) 51 Cal.3d 1130, 1133.) "Where, as here, no statement of decision was requested, all intendments will favor the [family] court's ruling and it will be presumed on appeal that the [family] court found all facts necessary to support the judgment." (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 649; accord, *Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 104.)  Then, we consider whether the implied findings are supported by substantial evidence.  (See *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1148, fn. 11.)

Although the family court based its ruling on the expert's report (which was admitted into evidence) and her testimony at the contested hearing, A.S. did not designate the expert report as part of the record on appeal.  The court issued an order after hearing that set out custody and visitation details, but the order did not explain the reasons for its ruling.  A.S. did not ask the family court to issue a statement of decision.  Yet her opening brief characterizes the court's ruling as "issued in the form of an extensive soliloquy covering the job of counsel in litigation, the COVID 19 Pandemic and the Court's own family," without the requisite findings under *LaMusga.*  Without a statement of decision, we must presume the family court made all findings necessary to support the judgment.  We further conclude substantial evidence supports these implied findings.

At the contested hearing, the court-appointed expert testified that this case involved "a very close call."  She opined that the fifth *LaMusga* factor—the parents' "ability to communicate and cooperate effectively and their willingness to put the interests of the children above their individual interests" (*LaMusga, supra,* 32 Cal.4th at p. 1101)—was dispositive and that she concluded that factor weighed in favor of D.S.  She

14

stated that the parents' main challenge in coparenting was their inability to communicate and cooperate effectively. As a result, she recommended D.S. become the primary caregiver because it was her opinion that D.S. would be more likely to facilitate Mason's relationship with A.S.

As to the remaining *LaMusga* factors, the expert testified that Mason loved both of his parents and had close ties to his extended family in Texas and in California. He also did well in school in Texas and California; he would have changed schools whether he stayed with A.S. in California or moved to Texas with D.S. She further stated that no party asserted Mason would suffer detriment by moving to Texas, and the expert concluded Mason would not suffer detriment from the move. The expert agreed her recommendation reversed who the custodial parent is "during the school year" and "during the summer." Mason's attorney agreed with the expert's recommendation. We conclude the expert's testimony is substantial evidence to support an implied finding by the family court that a "change in circumstances indicates that a different arrangement would be in the child's best interest." (*Montenegro, supra*, 26 Cal.4th at p. 256.) Further, as stated, the expert submitted an updated report addressing all the *LaMusga* factors.

A.S. does not address the expert's recommendation in her appellate briefing. Nor does she challenge the expert's testimony regarding the fifth *LaMusga* factor. As to the remaining factors, she acknowledges the second (distance), sixth (child's wishes), and eighth (current custody plan) factors are neutral. And she does not contend the seventh factor (reasons for the move) favor her over D.S. Further, even if we were to assume, as A.S. argues, the other *LaMusga* factors—first (stability), third (age), and

15

fourth (relationship with parents)—weigh in her favor, A.S. fails to explain why or how these favorable factors would override the five additional factors and the substantial evidence provided by the expert testimony. We conclude based on the record before us that they would not. Under these "heart-wrenching circumstances," the California Supreme Court requires that "we must permit our superior court judges—guided by statute and the principles we announced in *Burgess* and affirm in the present case—to exercise their discretion to fashion orders that best serve the interests of the children in the cases before them." (*LaMusga*, *supra*, 32 Cal.4th at p. 1101.)

Additionally, A.S.'s attempt to challenge D.S.'s stated reasons for the move away request—the suspected move to A.S.'s boyfriend's home, the change in schools, Mason's bedwetting incidents, and A.S.'s interference with D.S.'s custody time and video calls—does not override the substantial evidence supporting the implied finding that changed circumstances indicated it was in Mason's best interest to award primary custody to D.S. and grant his move away request. A.S. has failed to meet her burden to demonstrate an abuse of discretion.

The cases A.S. cites are distinguishable and do not persuade us reversal is warranted.

In *Jane J.*, a noncustodial father sought to obtain custody of his children and to move them from California to his new home in Alabama. The trial court granted his request, stating, "'It's time [Father] had an opportunity to parent these children. I'm going to change custody. He needs to be given the opportunity to be the parent that he's striving to be in the limited time that he has.'" The court also based its ruling on the mother's interference with the children's relationship with the father. (See *Jane J.,*

16

*supra,* 237 Cal.App.4th at pp. 900, 906.)  The appellate court concluded the trial court erred and granted the mother's petition for a writ of mandate.  (See *id.* at p. 910.)

*Jane J.* held the father as the noncustodial parent bore additional burdens of persuasion as part of the changed circumstances standard, including the burden "to establish that the children would not sustain detriment by the proposed move, and that the out-of-state move away will serve their best interests." (*Jane J., supra,* 237 Cal.App.4th at p. 905.)  It held the trial court abused its discretion by failing to consider the *LaMusga* factors, particularly the children's interest in the stability of the current custody arrangement.  *Jane J.* also faulted the trial court for "miss[ing] an opportunity to obtain expert guidance when it rejected the parents' stipulation to share in the costs to retain and use an Evidence Code section 730 evaluator to analyze the matter and to make recommendations for custody and visitation." (*Id.* at p. 906.)

Here, by contrast, the family court appointed an Evidence Code section 730 evaluator to make recommendations, and the record reflects it considered the *LaMusga* factors in making its ruling in adopting the expert's conclusion and testimony. Additionally, the record before us supports an implied finding that Mason would not suffer detriment from a move to Texas.  As discussed above, in comparing Mason's living situation in California and Texas, the expert testified both locations were essentially equal because Mason enjoyed his time in both places, had significant ties to both places, and did well in school in both places.

In *In re Marriage of C.T. & R.B., supra*, 33 Cal.App.5th at page 102, the noncustodial father sought to relocate his child out

17

of state and become the primary custodian.  As here, the father and mother both lived in California at the time of the final custody order, which awarded the parents joint legal and physical custody.  When the father moved to Arkansas, neither parent sought a change in the custody order and the mother in effect became the primary physical custodian of the child.  Six years after his move, the father sought to relocate the child to Arkansas, which the trial court granted.  (See *ibid.*)  The appellate court reversed because the father failed to demonstrate that changing physical custody would not detrimentally affect his son's interest in continuity and stability and that relocation was in the son's best interest.  (See *id.* at p. 97.)  It concluded the trial court abused its discretion by allowing a change of custody and relocation of the child based solely on a finding that the mother was the "least likely" to share the child with the other parent, especially because the other *LaMusga* factors "heavily" weighed in favor of keeping the mother as the primary custodian.  (*Id.* at p. 107.)  The evidence in that case demonstrated: the child had a strained relationship with the father and previously refused to have any contact with the father; the child had strong ties to his community in California and "minimal" ties to Arkansas; and the father, who was unemployed and financially dependent on his 80-year-old parents, had failed to demonstrate how he would provide for his son without their help.  (*Id.* at pp. 108-112.)

Unlike the child in *In re Marriage of C.T. & R.B*, it is undisputed Mason has a happy and bonded relationship with both parents; he has extensive community ties in California and Texas; and both parents are "good" parents who provide for Mason.  Additionally, here the *LaMusga* factors do not weigh heavily in favor of A.S., and the family court did not abuse its

18

discretion when it determined one factor was dispositive in light of the relative balance of the other factors.

## DISPOSITION

The November 29, 2022 order is affirmed.  D.S. may recover his costs on appeal.

MARTINEZ, P. J.

We concur:

STONE, J.                                    PULOS, J.*

---

*        Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.