Filed 8/14/14; pub. order 9/9/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHRISTINA L., <br><br>      Plaintiff and Appellant, <br><br> v. <br><br> CHAUNCEY B., <br><br>      Defendant and Respondent. | A140155 <br><br> (Solano County <br> Super. Ct. No. FFL083284) |

Christina L. (Mother) appeals an order granting to her and respondent Chauncey B. (Father) joint legal and physical custody of their son, O.L., and daughter, A.L. She contends the trial court improperly modified an earlier custody determination (under which she had sole legal and physical custody of the children) without finding a significant change in circumstances, and that the trial court erroneously failed to consider the effect of a domestic violence restraining order against Father. We shall reverse the order and remand the matter to the trial court for further proceedings.

## I.  BACKGROUND[1]

The two children were born in 2000 and 2002. It appears that Mother and Father's

---

[1] Father did not file a respondent's brief. As a result, we may accept as true the facts stated in Mother's opening brief. (*Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1077–1078.) "However, we do *not* treat the failure to file a respondent's brief as a 'default' (i.e., an admission of error), but examine the record, appellant's brief, and any oral argument by appellant to see if it supports any claims of error made by the appellant." (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1078, fn. 1; Cal. Rules of Court, rule 8.220(a)(2).)

relationship was marred by domestic violence on Father's part, and by 2004, they were no longer living together.

Mother obtained a temporary restraining order against Father in 2004, based on her assertions that he committed abuse, including pulling her hair and squeezing her hand so hard as she held car keys that her hand bled, bending the car keys, and that he grabbed the steering wheel of the car in which she was driving with the children, threw her, punched her, strangled her, and kicked and "stomped" her. Mother obtained another temporary restraining order against Father in 2005, after he pushed and grabbed her and refused to let her see the children after he picked them up from daycare. The court granted another temporary restraining order in 2006, after Father went into Mother's backyard, watched her through the window, and later told her what he had seen. Also in 2006, Mother was granted sole legal and physical custody of the children; Father was granted visitation at Mother's discretion.

The trial court issued a three-year domestic violence restraining order against Father in 2008 prohibiting him from, inter alia, harassing, striking, threatening, stalking, or contacting Mother. Father was granted two hours of supervised visitation a month.

In August 2011, the court entered an order awarding Mother sole legal and physical custody of the children, with supervised visitation for Father. The order acknowledged that a criminal protective order was in effect.

The court granted another temporary restraining order in August 2011, based on Mother's statements that Father kept showing up at her place of work, parked by her car, and confronted her in front of her manager and customers. At a September 2011 hearing, Mother testified that Father had approached her while she was working in a store and told her repeatedly that she needed to answer her phone. Father had also been waiting in his car, parked near hers, when she left work. Mother also testified that father had been physically violent to her in the past. The trial court granted a domestic violence protective order for a period of two years.

Father petitioned the court to terminate the restraining order in January 2013, asserting that Mother had visited his home and had spent time with him at holiday events.

The trial court denied the request, but modified the orders to allow brief and peaceful contact as required for court-ordered visitation.

Father also made a request to modify the custody order in January 2013. In the request, he acknowledged that a domestic violence order was in effect. He alleged that Mother had violated the restraining orders and made false accusations against him in order to separate him from his children.

At the hearing on the motion, Father stated that he wanted O.L. to be able to visit whenever O.L. wished. He also stated that since November 2012, he had had part-time custody of a daughter by another relationship, who was then six years old. He wanted A.L. to have the same visitation schedule as his younger daughter so the two sisters could get to know each other.

Father testified that he had not seen O.L. or A.L. for three months, because Mother did not drop them off at his house, and that he had not contacted her about the issue. Mother testified that she no longer took the children to Father's house, that Father had failed to show up for visitation at a neutral site, and that he had had very little contact with the children for the past five years.

The trial court issued a written order. The court found Mother had raised issues regarding a history of abuse or neglect by Father, but that she had not adduced sufficient evidence for the court to find it must make a decision based on the children's health, safety, and welfare. The court also found the children would benefit from spending time with their half-sister. The court ordered Mother and Father to share joint legal and physical custody of the children, and established a schedule under which they would spend each weekend with Father.[2] Mother has appealed this order.

---

[2] Under the schedule, Father would pick the children up from school each Friday afternoon and, on alternating weekends, would return them to school either on Monday or Tuesday morning. This schedule is consistent with Father's custody schedule with his younger daughter.

## II. DISCUSSION

### A. Effect of Domestic Violence Restraining Order

Mother contends the trial court erred by not applying a rebuttable presumption under Family Code,[3] section 3044 that Father should not have custody because of his history of domestic violence, as shown by the 2011 restraining order issued pursuant to the Domestic Violence Prevention Act (§ 6200 et seq. (DVPA)).

Section 3044, subdivision (a), provides in pertinent part: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against the other party seeking custody of the child . . . within the previous five years, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to section 3011. This presumption may only be rebutted by a preponderance of the evidence." Subdivision (c) of the same statute provides that "a person has 'perpetrated domestic violence' when he or she is found by the court . . . to have engaged in any behavior involving, but not limited to, threatening, striking, harassing, destroying personal property or disturbing the peace of another, for which a court may issue an ex parte order pursuant to Section 6320 to protect the other party seeking custody of the child . . . ."

"Because a DVPA restraining order must be based on a finding that the party being restrained committed one or more acts of domestic abuse, a finding of domestic abuse sufficient to support a DVPA restraining order necessarily triggers the presumption in section 3044." (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1267.) This presumption changes the burden of persuasion, but "may be overcome by a preponderance of the evidence showing that it is in the child's best interest to grant joint or sole custody to the offending parent." (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1055; see also § 3020, subd. (a).)

---

[3] All statutory references are to the Family Code.

The 2011 restraining order was based on evidence that Father had recently confronted Mother at her place of work, in front of a manager and customers, that on several occasions he had parked his car by hers near her workplace, and that he had been physically violent to her in the past. Harassing or disturbing the peace of another is sufficient to constitute domestic violence for purposes of section 3044 (§ 3044, subd. (c)), and Father's most recent actions occurred less than five years before the court made the order on appeal here (§ 3044, subd. (a)). We accordingly agree with Mother that the trial court was obliged to apply the presumption of section 3044 that granting custody to Father would be detrimental to the children's best interests.

There is no indication that the trial court did so. Rather, the court appeared to rely solely on the standards of section 3011, subdivision (b). Under section 3011, in making a determination of the best interest of a child, the court should consider "(b) [a]ny history of abuse by one parent or any other person seeking custody against . . . [¶] (2) [t]he other parent." However, "[a]s a prerequisite to considering allegations of abuse, the court may require substantial independent corroboration, including, but not limited to, written reports by law enforcement agencies, child protective services or other social welfare agencies, courts, medical facilities, or other public agencies or private nonprofit organizations providing services to victims of sexual assault or domestic violence." (§ 3011, subd. (b).)

Here, the trial court noted that "Mother [had] expressed to the court and mediators numerous fears of Father being abusive or dangerous to the children, thereby raising issues regarding a history of abuse or neglect by a parent, [Family Code section] 3011(b)." The court continued: "The state legislature has recognized the need for caution when evidence is received from parties regarding abuse by a parent. Before even considering such evidence, the court can require substantial independent corroboration. See [Family Code section] 3011. [¶] . . . The court did not require Mother to provide such corroboration, but finds she did not adduce sufficient evidence for the court to find that it must make a decision based on children's health, safety and welfare."

5

In effect, the trial court put the burden on Mother to show anew that Father had committed domestic violence. In doing so, it appears to have ignored both the existing restraining order and the legal effect of the judicial findings that were necessarily made in connection with that order. (See *S.M. v. E.P.*, *supra*, 184 Cal.App.4th at p. 1267.) Nothing in the order even hints the court applied the presumption of section 3044, or required Father to show by a preponderance of the evidence that it would not be detrimental to grant him custody of the children. (See *F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 28–29 [on remand, trial court should expressly find whether section 3044 presumption had been rebutted].) We shall therefore reverse the order and remand this matter to allow the trial court to consider whether Father has met this burden.[4]

## B. Changed Circumstances

Mother also contends the trial court erred in modifying the prior custody order without finding a change in circumstances. Although we are reversing the order on the basis of the section 3044 presumption, we shall address this issue for the guidance of the trial court on remand.

In its August 2013 order granting Mother and Father joint custody of the children, the court expressed concern that Mother was unwilling to ensure Father had frequent and continuing contact with the children (see § 3020, subd. (b)), but also noted the importance of continuity and stability in custody arrangements (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32–33 (*Burgess*)). The court concluded the children would benefit from increasing their time with Father as well as from spending time with their half-sister. However, the court made no finding that circumstances had changed since it made the 2011 custody order.

---

[4] Because we are reversing and remanding the matter to the trial court on this basis, we need not separately consider Mother's related contentions that the trial court improperly failed to give primary consideration to the children's health, safety, and welfare (§ 3020, subd. (c)) and did not provide an adequate statement of reasons (§ 3011, subd. (e)(1)).

" 'It is settled that to justify ordering a change in custody there must generally be a persuasive showing of changed circumstances affecting the child. [Citation.] And that change must be substantial: a child will not be removed from the prior custody of one parent and given to the other "unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change." [Citation.] The reasons for the rule are clear: "It is well established that the courts are reluctant to order a change of custody and will not do so except for imperative reasons; that it is desirable that there be an end of litigation and undesirable to change the child's established mode of living." [Citation.] [¶] Moreover, although a request for a change of custody is also addressed in the first instance to the sound discretion of the trial judge, he [or she] must exercise that discretion in light of the important policy considerations just mentioned. For this reason appellate courts have been less reluctant to find an abuse of discretion when custody is changed than when it is originally awarded, and reversals of such orders have not been uncommon. [Citations.] [¶] 'Finally, the burden of showing a sufficient change in circumstances is on the party seeking the change of custody. [Citations.]' " (*Speelman v. Superior Court* (1983) 152 Cal.App.3d 124, 129–130 (*Speelman*); see also *Burgess*, *supra*, 13 Cal.4th at p. 37.) "The changed circumstances test requires a threshold showing of detriment before a court may modify an existing final custody order that was previously based upon the child's best interest." (*Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 996; see also *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 959–960.) A "substantial showing" must be made to modify a final custody determination. (*In re Marriage of Brown & Yana*, at p. 960.)

The 2011 custody order granted Mother sole legal and physical custody of the children, and there is nothing in the order to suggest it was anything but a final custody determination. Accordingly, Father had the burden to show changed circumstances to justify a change to the order. The only "change of circumstances" Father asserted in his request for a modification was that Mother had made false accusations against him in order to obtain a restraining order, that as a result she had had exclusive access to the

7

children, that the children had been "neglected and coached," and that Mother had not obeyed the restraining order. But the trial court *refused* Father's request to terminate the restraining order. There is no basis for a conclusion that Mother made false accusations against Father to obtain the order or that her accusations somehow constituted changed circumstances. Nor is there any evidence in the record that Mother neglected the children.

The only arguably changed circumstance shown by the record is that Father's six-year-old daughter had begun living with him part-time. Father did not argue, and the trial court did not find, that this constituted a substantial change such that it was " 'essential or expedient for the welfare of the child[ren] that there be a change' " (see *Speelman*, *supra*, 152 Cal.App.3d at p. 129) or that that children would suffer detriment absent the change in custody (see *Ragghanti v. Reyes*, *supra*, 123 Cal.App.4th at p. 996). Indeed, the trial court did not make any findings with regard to changed circumstances. In any further proceedings, the court shall consider whether Father has met his burden to show a change in circumstances sufficient to justify altering the prior custody order.

### III.    DISPOSITION

The order appealed from is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.


_____
Rivera, J.

We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.

8

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHRISTINA L., | |
| Plaintiff and Appellant, | A140155 |
| v. | |
| CHAUNCEY B., | (County of Solano |
| Defendant and Respondent. | No. FFL-08-3284) |

BY THE COURT:

The written opinion which was filed on August 14, 2014, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

Date: _____  _____ P.J.

1

Trial court:        Solano County

Trial judge:       Hon. Garry T. Ichikawa

Attorneys:

Dentons US, LLP and Bella Shirin and Karen C. Marchiano for Plaintiff and Appellant.

Family Violence Appellate Project and Erin D. Smith, Nancy K.D. Lemon, and Jennafer Dorfman Wagner for Plaintiff and Appellant.

No appearance for Defendant and Respondent