Filed 9/18/15  C.M. v. H.A. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| C.M.,<br><br>        Appellant,<br><br>    v.<br><br>H.A.,<br><br>        Respondent. | D066941<br><br><br><br>(Super. Ct. No. DS39080) |

APPEAL from orders of the Superior Court of San Diego County, Albert T. Harutunian III, Judge.  Affirmed.

Lorraine M. Nisbet for appellant.

No appearance for respondent.

C.M. (mother) appeals the trial court's order granting H.A.'s (father) request for an order modifying child custody.  Mother contends the trial court erroneously modified custody without (1) finding a significant change in circumstances; (2) applying the

presumption against awarding custody to father under Family Code[1] section 3044; (3) providing a statement of reasons under section 3011(e).

We affirm. Substantial evidence supports the trial court's determination that mother engaged in conduct designed to frustrate father's visitation and relationship with the children. "Conduct by a custodial parent designed to frustrate visitation and communication may be grounds for changing custody." (*Burchard v. Garay* (1986) 42 Cal.3d 531, 540, fn. 11.) Additionally, the trial court did not abuse its discretion in finding father rebutted the section 3044 presumption. Assuming section 3011(e) applies in this case, the court provided an adequate statement of reasons.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *Marriage, Divorce, Custody*

Mother and father married in 1996 and had four children. The oldest child was born in 1998 and the youngest in 2005. In August 2009 mother obtained a domestic violence restraining order against father, and the parties divorced in 2010. Since then, mother has lived in San Diego County and father lives and works in Bakersfield (Kern County). In 2010 the court ordered joint legal custody, with the children's primary residence with mother. The court ordered visitation with father on the first and third

---

[1] All statutory references are to the Family Code unless otherwise specified. When referring to statutory subparts within that code, the word "subdivision" is omitted.

[2] Father did not file a respondent's brief. This is not a default (i.e., an admission of error). Rather, we examine the record to see if it supports any claims of error made by the appellant. (*Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 734, fn. 1.)

weekends of each month.  On the first weekend, the children were to be exchanged in Chula Vista.  On the third weekend, the exchange point was Santa Ana.

B.  *2012 Proceedings To Modify Custody*

In 2012 father initiated proceedings to modify custody, alleging "mother is presently not complying with court orders."  Family Court Services (FCS) interviewed mother and father, and prepared a report.

The FCS report noted "there are no current allegations of domestic violence, child abuse, substance abuse, mental illness, or criminal histories in this matter."  The report noted mother was not complying with the visitation order:

> "The parents are having difficulties with the exchanges; there are times wherein the mother does not show up for the exchanges.  The mother has reportedly not cooperated with sharing of passports.  The mother has reportedly declined to provide the father with her current address or the name and address of the children's school."

Father complained that during the entire month of August 2012, mother did not transport the children to the exchange point, and there were other times when "the mother notifies him at the last minute that she will not be taking the children to the exchange, and she does not provide him with an explanation."

Mother admitted she was "not showing up at the exchanges," but said this was due to "not having sufficient resources."  Mother promised she would "make every effort to comply with the court order" and would "borrow the maternal grandmother's vehicle to transport the children."  Mother "expressed that she wants to show this Court that [she] is willing and able to comply with the Court orders."  Mother assured the FCS counselor

3

that "now her situation is stable" and "she can now focus in getting the children to exchange point in Orange County."

In January 2013, adopting the recommendations in the FCS report, the court entered an order essentially maintaining the status quo: i.e., joint legal custody, and physical custody with mother. Father was given weekend visitation twice per month. The court did, however, change the exchange point from Santa Ana to the Los Angeles police department parking lot.

C. *2014 Proceedings To Modify Custody*

In April 2014 father filed a request for an order modifying custody and visitation, asking the court to award him legal and physical custody of the four children. Mother had prevented him from seeing the children since January 2014.

In a declaration, father stated, "My ex wife doesn't want me to see our kids anymore. She keeps making excuses after excuses for me not to be a part of our kids['] lives. She does not want to bring our kids to the drop of[f] point in L.A. Police Station . . . . If she can't obey court orders then let me have my kids back home [with] me . . . because she[']s not obeying court orders . . . . I need to be part of those kids['] lives . . . . I have not seen my kids since January 15, 2014."

In May 2014 mother filed a "responsive declaration to request for order." Mother opposed father's request for order and asked the court to award mother legal and physical custody. Mother denied she was not allowing visitation, stating, "I never denied him visitation." Mother attributed recent problems to father's November 2013 remarriage.

4

Mother expressed concerns about the children being in father's care, stating two of the children were currently "in therapy."

Mother stated three children are in "special needs classes," one with a learning disability, one with autism, and one with "ADHD." Mother asserted there had been a "material change in circumstances" since the last custody order was made in that the "[o]ther parent has been inconsistent [with] visitation, manipulating, having my kids be in emotional conflict, having depression & needing therapies." Mother asked the court to enter an order giving her "full custody legal and physical" and allow father "visits twice a month" with the exchange point in Chula Vista.

In May 2014 the parties again met with FCS. Father "expressed concerns" about mother's unwillingness to "share, co-parent, and about blocking his ability to maintain frequent and continuing contact with the children." Father believed mother was "aligning with the children to believe they should not be with him." He stated the children were "no longer safe" with mother because "she is not promoting his relationship with them, is turning them against him, and the oldest child is smoking marijuana."

Father asserted "mother refuses to comply with court orders since their first FCS conference in April 2010." He stated "mother rarely shows up with the children" at the exchange point and "gives him multiple excuses for not bringing the children, such as that she has no money, or that one of the children[] had a tooth removed, or that the children are scared of him and they do not want to see him."

Mother denied father's assertions. She said the children refuse to go with father because "they do not feel comfortable with him." However, mother admitted that

5

"sometimes she does not take the children to the exchange location." Mother said "she stopped the visits with the father" because the children were "in 'shock'" that father remarried. Mother claimed one of her children reported the stepmother's daughter had acted inappropriately, causing mother to fear the stepdaughter "could molest her son."

Before the family court counselor completed the interview, mother terminated the session. According to the counselor:

> "[M]other appeared to be restless, anxious, and angry. The mother kept repeating that she needed to leave the session because she did not believe what was going on. In addition, the mother had difficulty answering or responding to the father's complaints. Almost towards the end of the FCS conference, the mother abruptly left . . . ."

The family court counselor ran after mother, stating, "If you leave I will tell the judge you left." Mother replied, "[G]o right ahead."[3]

In June 2014 the FCS counselor interviewed the two oldest children. The 15-year old said she felt "sad, confused, mad, and annoyed that her parents are upset with each other . . . ." She "expressed she does not want to live with her father because she does not have a positive relationship with him, because he blames her for her mother's mistakes, and because he annoys her." She "shared that sometimes her mother does not take her and her siblings to the exchange location because she has things to do such as, she has a job interview, or she is tired or busy with court issues." The 15-year old admitted to

---

3    On June 20, 2014, mother filed a complaint with family court services, asserting the counselor was biased and made her feel that she was being "judged and not heard." The record provided by appellant does not indicate the disposition of that complaint.

smoking marijuana "every single day" in eighth grade, but had stopped smoking marijuana "about six months ago." She reported cutting herself for several months but had recently stopped.

The 14-year old said "sometimes she does not feel like visiting her father because she does not feel comfortable and is afraid." "[S]he feels uncomfortable at her father's house because she does not have a close relationship with her stepmother." She added that her father "has bumped her in the head and has hit her with the Bible."[4] She reported her oldest sister found a picture in their father's house of "some ladies posing with bikinis and a DVD with naked people." However, she said "she never saw the DVD." She said "sometimes her mother does not take them to the exchange location because she does not have money for gasoline or she is busy with other things."

FCS was unable to interview the other two children because "at the end of the second interview," mother approached the family court counselor and was "very upset indicating that she was stopping the interviews and she did not want the two other children to be interviewed."

The FCS report recommended a change in custody, stating:

> "This is the parents' third FCS conference. The undersigned
> reviewed both FCS reports. The parents' last FCS conference was
> on November 7, 2012 where concerns were reported about the
> mother was not following orders regarding the exchanges of the
> children . . . . It seems that the problems continue and the mother
> has been unable to make a commitment to share the children with

---

4    Mother's brief characterizes this incident as recent child "abuse" by father. The trial court did not find this assertion credible.

the father.  Thus, this counselor believes that a change in custody is warranted at this point.  Even though the children are presenting as having issues when visiting the father, it appears that these issues have developed due to the inconsistencies in their contacts with the father and because mother involves them in adult and Court matters."

"It is concerning that the mother has a pattern of suspending the father's parenting time with the children whenever she qualifies something as a problem at the father's house. . . .  It seems that this process is difficult for the mother since, for an unknown reason, she refuses to take the children to the exchange location in Los Angeles . . . .  [¶] The mother's statements and behavior during the FCS conference and her abrupt decision to leave the FCS conference, make this counselor believe that perhaps the mother's behavior at home in front of the children, and her dislike towards the father or unwillingness to share, will likely add to the children's emotional problems.  As mentioned . . . the oldest child reported that she was smoking marijuana for about a year on a daily basis and was cutting herself.  Thus, it is obvious that this is creating emotional problems for the children."[5]

The FCS report made the following recommendations:

1. Father shall have legal custody.

2. Father shall have physical custody.

3. The children shall be with mother the second and fourth weekend of every month.

4. The exchange point shall remain Los Angeles Police Department.

5. Holidays, special days, school vacations, with mother or father, as specified in the report.

---

[5]  Mother's brief states, "Inexplicably, the mediator recommended granting physical custody to Father . . . ."  The recommendation is not "inexplicable."  As quoted in the text above, the family court counselor stated detailed reasons for her recommendation.

6. The children shall participate in counseling.  Father shall enroll the children in counseling one week after the children are living with him.

7. Mother shall participate in individual counseling.

On July 7, 2014, the court conducted a hearing.  Mother and father appeared, each self-represented.  Mother testified the FCS report was "not complete.  She didn't ask me, like, enough questions for her to even finish her report, which that's why I'm very confused."  The court asked mother why she "walked out of the mediation toward the end."  Mother replied, "I kept being interrupted.  I kept being mocked.  And I did ask the mediator if I could walk out.  And she said, 'No, you can't.  Sit down."  "I just felt I wasn't being heard, got up, and I left.'"

The court also asked mother to explain why she would not let the mediator speak to two of her children.  Mother replied that when the 15-year-old left the interview, she was "distressed" and "very tense" and did not believe the counselor was listening.  Mother told the court she terminated the interviews because the court services counselor was "intimidat[ing]" the children.

The court also gave mother a full opportunity to explain her position on the merits, stating, "Is there any other information you feel that I need to be aware of before making a decision?"  Mother stated, "I'm just saying there were so many issues that I did not understand . . . .  I've done my best to cooperate with the court order all the time."

Father testified mother had repeatedly violated his visitation rights as established in existing orders.  "[T]his is not my first time doing this. . . .  And I have excuses after excuses after excuses why I'm not seeing the kids."  Father testified, "[T]he mediator was

9

very respectful. She told us straight in front, 'I'm going to be strict and direct.' So I'm, '[O]kay. Fine with me.' So she started asking her questions, but she couldn't answer those questions. . . . [¶] All I want is just to see the kids. I haven't seen my kids since January." "[W]hen the mediator was talking to her, she was direct. She got nervous, and she said the mediator and I was against her. I go, 'Nobody is against you. The lady wants you to tell her why you haven't obeyed the court order. Why you keep making excuses.'"

The court invited mother to offer rebuttal. She contradicted father's testimony, stating "he came to court lying, saying that I have denied him seeing our kids, which was a lie."

At the end of the hearing, the court stated, "The Court believes that the Family Court Service mediator's recommendation is in the best interest of the children, and the Court is going to adopt the recommendation as an order of the Court." On July 7, 2014, the court entered an order adopting the FCS recommendation and providing for preparation of a formal order. On September 30, 2014, the court entered "Findings and Order After Hearing" providing legal and physical custody of the children to father, visitation to mother and other related orders.

D. *Mother's Motion for Reconsideration*

On July 29, 2014, now represented by an attorney, mother filed a motion for reconsideration under Code of Civil Procedure section 1008, subdivison (a). In an accompanying memorandum of points and authorities, mother's attorney asserted: (1) although two domestic violence restraining orders had been entered against father within

10

the past five years, the court failed to apply the presumption against custody to the father under section 3044; and (2) a "move-away" analysis should be conducted to determine whether it is in the children's "best interest" to move to Kern County with their father.

On October 16, 2014, the court conducted a 40-minute hearing on mother's motion for reconsideration. After taking the matter under submission, on October 21, 2014 the court entered an order denying the motion, stating:

> "The Court was aware of the Family Code section 3044 presumption at the previous hearing, and the Court's ruling is an implied ruling the presumption was overcome by Father. The Court now explicitly states the presumption was overcome. Prior restraining orders had expired, a significant passage of time had occurred since the conduct, the kidnap case was dismissed by the prosecutor with no finding of guilt, Father has not been shown to have engaged in subsequent domestic violence ([Mother's] allegations were unpersuasive and unsubstantiated), and the Court determined sole legal and physical custody to Father was in the best interest of the children."

Describing the changed conditions that caused the court to modify custody, the court further explained:

> "[Mother's] attitude, actions, and interference with the mediator's efforts to gather information and make a recommendation amply demonstrate her current unwillingness to place the interest of the children above her animosity toward Father. Her complaint against the mediator stemmed from her unilateral actions to leave the mediation and terminate the interviews with the children. She cannot try to derail the mediation and then complain it was not thorough. She made no showing that she raised a concern with the mediator about a joint mediation with Father (there being no restraining order in effect)."

11

Mother timely appealed from the September 30, 2014 "Findings and Order After Hearing."[6]

DISCUSSION

I. *Standard of Review*

In reviewing permanent custody orders, we employ the abuse of discretion standard of review. (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1087-1088.) Trial courts have broad powers to fashion custody and visitation plans in the best interest of the child, and the weight to be accorded to the applicable factors are left to the superior court's sound discretion. (*Ibid.*) "It is a deferential standard of review that requires us to uphold the trial court's determination, even if we disagree with it, so long as it is reasonable." (*Stull v. Sparrow* (2001) 92 Cal.App.4th 860, 864.)

"'The trial judge, having heard the evidence, observed the witnesses, their demeanor, attitude, candor or lack of candor, is best qualified to pass upon and determine the factual issues presented by their testimony. This is especially true where the custody of minor children is involved. An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the trier of facts. Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal. Where minds may reasonably differ, it is the trial judge's discretion and not that of the appellate court which must control.'" (*In re Marriage of*

---

6    Under Code of Civil Procedure, section 1008, subdivision (g), the order denying reconsideration is reviewable as part of mother's appeal of the September 30, 2014 order.

12

*Lewin* (1986) 186 Cal.App.3d 1482, 1492, quoting 4 Goddard, Cal. Practice (3d ed. 1981) Family Law Practice, § 218, p. 404, fns. omitted.)

In addition, "'we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment . . . . Moreover, in examining the sufficiency of the evidence to support a challenged finding, we '"must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion." [Citations.] If appellate scrutiny reveals that substantial evidence supports the trial court's findings and conclusions, the judgment must be affirmed.'" (*Catherine D. v. Dennis B.* (1990) 220 Cal.App.3d 922, 931.) "'"Error is never presumed. . . . 'A judgment or order of the lower court is *presumed correct.* All intendments and presumptions are indulged to support it on matters as to which the record is silent . . . .'"'" (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.)

II. *The Court Determined There Were Changed Circumstances Justifying Changing Custody, and That Determination Is Supported by Substantial Evidence*

In January 2013 the trial court entered a final custody order providing legal custody jointly to mother and father, and physical custody to mother. Where, as here, the trial court has entered a final custody order, "the paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of established patterns of care and emotional bonds with the primary caretaker—weigh

heavily in favor of maintaining ongoing custody arrangements." (*In re Marriage of Burgess* (1966) 13 Cal.4th 25, 32-33.)

To justify ordering a change in custody there must generally be a persuasive showing of changed circumstances affecting the child. "'"And that change must be substantial: a child will not be removed from the prior custody of one parent and given to the other 'unless the material facts and circumstances occurring subsequently are of a kind to render it essential or expedient for the welfare of the child that there be a change.' [Citation.] The reasons for the rule are clear: 'It is well established that the courts are reluctant to order a change of custody and will not do so except for imperative reasons; that it is desirable that there be an end of litigation and undesirable to change the child's established mode of living.'"'" (*Christina L. v. Chauncey B., supra,* 229 Cal.App.4th at p. 738.) "This principle avoids an endless round of emotionally and financially draining litigation in the family law courts." (*Jane J. v. Superior Court* (2015) 237 Cal.App.4th 894, 903.) The moving party has the twofold burden of showing how circumstances have changed and why the custody modification would be in the child's best interests. (*In re Marriage of McLoren* (1988) 202 Cal.App.3d 108, 111–112, 114.)

Mother contends the trial court "did not make any findings of changed circumstances on the record or identify any facts that could constitute changed circumstances." (Italics omitted.) Mother asserts the FCS recommendation, adopted by the court, also did not include "any facts or evidence regarding changed circumstances."

Contrary to Mother's assertions, substantial evidence supports the trial court's finding of a material change in circumstances. The record, properly viewed in support of

14

the order, shows mother resisted and interfered with father's efforts to establish a relationship with the children. By her own admission in November 2012, mother *repeatedly* failed to comply with court-ordered visitation requiring her to exchange children at the specified exchange point. At that time, mother promised she would "show this court that [she] is willing and able to comply with the Court orders." Taking mother at her word, the court did not modify custody or visitation at the time—legal custody remained joint, and mother retained sole physical custody of the four children.

But within two months, mother continued violating court ordered visitation. As father stated, "she keeps making excuses and after excuses for me not to be a part of our kids' lives." From January through April 2014, mother prevented the children from seeing father, despite an order providing the children "shall be with the father the 1st and 3rd weekends of the month."

On appeal, mother complains that the FCS recommendation "did not include any facts or evidence regarding changed circumstances"—but the FCS report not only documented mother's repeated failures to comply with the visitation order, but also noted one of the children had been smoking marijuana "every single day" during the past year and had been recently cutting herself. The family court counselor noted, "The father recently found out the oldest child is using marijuana and believes the mother is in denial."

Mother had a full and fair opportunity to be heard. At the hearing on July 7, 2014, the trial court asked mother to explain why she terminated the FCS interview and why she also prohibited two of her children from being interviewed. After father testified, the

court allowed mother to present rebuttal, stating, "Is there any other information you feel that I need to be aware of before making a decision?"

Contrary to mother's assertions on appeal, the court's written order denying reconsideration contains a finding of changed circumstances. The order states, "[Mother's] attitude, actions, and interference with the mediator's efforts to gather information and make a recommendation amply demonstrate her *current unwillingness* to place the interest of the children above her animosity toward father." (Italics added.) Although the trial court did not use the phrase "changed circumstances," the entire proceeding was about changed circumstances. In fact, Mother herself claimed there had been a "material change in circumstances" since the last custody order. By using the phrase "current unwillingness," when speaking of the mother's behavior, order reflects the court was focusing on "current," i.e., changed conditions.

Moreover, mother's attorney did *not* ask the trial court to make any finding of "changed circumstances." In the motion for reconsideration, counsel asked the court "to ascertain whether it is in the children's *best interest* to move to Kern County with their father . . . ." (Italics added.) The court stated, "[S]ole legal and physical custody to Father was in the *best interest* of the children."

Mother's burden-of-proof argument is based on a profound distortion of the record. A motion for reconsideration under Code of Civil Procedure section 1008, subdivision (a) must be based upon "new or different facts, circumstances, or law." Here, in denying mother's motion for reconsideration, the court first determined there were no new or different facts *warranting reconsideration*, stating:

16

> "[Mother] failed to obtain the relief she desired while representing herself, and now seeks a second bite of the apple with retained counsel, *with no significant change in circumstances*. No truly new facts were presented, just more of the same facts previously presented to the mediator and the court (e.g., the kids do not want to be with Father)." (Italics added.)

Read in context, as it must be, the court's statement that mother had not presented any "significant change in circumstances" obviously pertains to the prerequisites for a valid motion for reconsideration (i.e., new or different facts, circumstances, or law), and was not addressed to the merits of the custody issues.

### III. *The Court Properly Applied the Section 3044 Presumption*

#### A. *Factual Background*

In August 2009, before the parties divorced, the Superior Court of San Diego County entered a domestic violence restraining order against father that expired in one year.

According to mother's appellate brief, in January 2010 father was charged with kidnapping mother. In connection with that charge, in January 2011, the Superior Court of Kern County issued a domestic violence order restraining father from contacts with mother. Although mother's brief does not mention this fact, the trial court noted "the kidnap case was dismissed by the prosecutor with no finding of guilt . . . ."

#### B. *The Trial Court Properly Applied Section 3044*

Section 3044 provides for a rebuttal presumption that it is detrimental to the best interest of a child to award custody to a person who has "perpetrated domestic violence"

17

within the previous five years.  The presumption under section 3044 may be rebutted by a preponderance of the evidence. (§ 3044(a).)  Section 3044(a) states:

> "(a) Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against the other party seeking custody of the child or against the child or the child's siblings within the previous five years, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Section 3011. This presumption may only be rebutted by a preponderance of the evidence."

In determining whether the presumption has been overcome, the court is required to consider seven factors set forth in section 3044(b):

> "(1) Whether the perpetrator of domestic violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child.  In determining the best interest of the child, the preference for frequent and continuing contact with both parents, as set forth in subdivision (b) of Section 3020, or with the noncustodial parent, as set forth in paragraph (1) of subdivision (a) of Section 3040, may not be used to rebut the presumption, in whole or in part.

> "(2) Whether the perpetrator has successfully completed a batterer's treatment program that meets the criteria outlined in subdivision (c) of Section 1203.097 of the Penal Code.

> "(3) Whether the perpetrator has successfully completed a program of alcohol or drug abuse counseling if the court determines that counseling is appropriate.

> "(4) Whether the perpetrator has successfully completed a parenting class if the court determines the class to be appropriate.

> "(5) Whether the perpetrator is on probation or parole, and whether he or she has complied with the terms and conditions of probation or parole.

18

"(6) Whether the perpetrator is restrained by a protective order or restraining order, and whether he or she has complied with its terms and conditions.

"(7) Whether the perpetrator of domestic violence has committed any further acts of domestic violence."

"If a domestic violence restraining order has been issued, then it is clear that there has been a finding of domestic violence sufficient to trigger the presumption of section 3044." (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1500, fn. 10.) Here, the presumption was triggered because a domestic violence restraining order issued against father on August 31, 2009 (expiring on August 31, 2010), and again on January 11, 2010! (expiring on January 11, 2013)(AA 6)!, both of which are within five years of the July 7, 2014 order modifying custody.

"The section 3044 presumption . . . does not change the best interest test, nor supplant other Family Code provisions governing custody proceedings. This presumption may be overcome by a preponderance of the evidence showing that it is in the child's best interest to grant joint or sole custody to the offending parent. (§ 3044(b)(1).) Nor does the statute establish a presumption for or against joint custody; again, the paramount factor is the child's health, safety and welfare. (§§ 3020(a), 3040(b).) And where the section 3044 presumption has been rebutted, there is no statutory bar against an award of joint or sole custody to a parent who was the subject of the order." (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1055.)

We reject mother's assertion the court failed to properly exercise its discretion in considering the section 3044 factors. At the hearing on October 16, 2014, mother's

19

lawyer read section 3044(b) to the court. In the order denying reconsideration, the court cited section 3044, was aware section 3044 applied in this case, and explained why father had overcome the presumption:

> "The Court was aware of the Family Code section 3044 presumption at the previous hearing, and the Court's ruling is an implied ruling the presumption was overcome by Father. The Court now explicitly states the presumption was overcome. Prior restraining orders had expired, a significant passage of time had occurred since the conduct, the kidnap case was dismissed by the prosecutor with no finding of guilt, Father has not been shown to have engaged in subsequent domestic violence ([Mother's] allegations were unpersuasive and unsubstantiated) . . . ."

In view of the trial court's awareness of the applicability of section 3044 and its statement of reasons why the section 3044 presumption was overcome, we are not persuaded by mother's contention that the court's failure to discuss *all* the evidence that might bear on that determination, including all the statutory factors set forth in subdivision (b), demonstrates that the court failed to apply the proper criteria or made incorrect legal assumptions in making its determination under the statute.

For example, pointing to section 3044(b)(2), mother contends "[t]here was no evidence that father has completed a batterer's treatment program and/or alcohol or drug abuse counseling." However, the August 2009 restraining order did *not* require father to attend a "batterer intervention program"—that preprinted item on the form was crossed out, indicating it was inapplicable.

Moreover, there is no evidence in this record father had any drug or alcohol abuse issue. To the contrary, the December 12, 2012 FCS report states, "There are no current allegations of domestic violence, child abuse, *substance abuse*, mental illness, or criminal

20

histories in this matter." (Italics added.) The June 2014 FCS report states there is a concern with substance abuse, but that pertained to one of the children, not father.

Pointing to section 3044(b)(4), mother also contends there was "no evidence" father had completed a "parenting class." However, at the October 16, 2014 hearing on the motion for reconsideration, mother's lawyer conceded, "I believe he [father] has completed a parenting program."

IV. *The Court's Statement of Reasons Is Adequate Under Section 3011*

Section 3011(e)(1) provides that where allegations of a history of abuse against the other parent are made, then a court awarding custody to that parent "shall state its reasons in writing or on the record."[7]

Mother contends the trial court was required to state its reasoning under section 3011(e), and the court's statement of reasons, i.e., "[Mother's] attitude, actions, and interference with the mediator's efforts to gather information and make a recommendation amply demonstrate her current unwillingness to place the interest of the children above her animosity toward Father," is insufficient.

Assuming the trial court here was required to provide a statement of reasons pursuant to section 3011(e), the statement was sufficient.

---

7      Section 3011 applies when a trial court makes a determination of the best interest of a child in a proceeding for dissolution of marriage, nullity of marriage, legal separation of the parties, exclusive custody pursuant to section 3120, custody in a proceeding pursuant to the Domestic Violence Prevention Act, custody in an action pursuant to the Uniform Parentage Act (§ 7600 et seq.), or custody in an action brought by the district attorney. (§§ 3011, 3021(a)-(g).)

21

A statement of reasons under the Family Code is different than a "statement of decision" under Code of Civil Procedure section 632, which requires a court to "issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial."

In *In re Marriage of Buser* (1987) 190 Cal.App.3d 639 (*Buser*), the appellate court explained the distinction between these two types of statements in the context of a joint custody order under former Civil Code section 4600.5 (now Family Code section 3082), which, similar to section 3011(e)(1), required the court to "'state in its decision the reasons for granting or denying the request'" for joint custody. (*Buser, supra,* at p. 642, quoting former Civ. Code, § 4600.5, subd. (c).)

The *Buser* court explained as follows: "In utilizing different language in [former Civil Code section 4600.5, subdivision (c) and Code of Civil Procedure section 632] the Legislature clearly intended to distinguish a statement of reasons from a statement of decision. Otherwise, the Legislature would simply have provided for a statement of decision when joint custody is granted or denied. [¶] We believe that the Legislature intended a statement of reasons to be something different in content and purpose than a statement of decision. The statement of reasons was not intended to set forth the legal basis for the decision, *but to provide parents with the reasons—in plain, everyday English—why the court granted or denied joint custody*. In contrast, a statement of decision is a formal legal document containing the factual and legal basis for the court's decision on each principal controverted issue for which a statement is requested. Because

22

of the significant legal effect of a statement of decision, Code of Civil Procedure section 632 and California Rules of Court, [former] rule 232, provide a highly detailed process by which counsel for the litigants can provide input into and affect the final content and language of the statement of decision, so that the appellate court has before it the factual and legal basis for the trial court's determination of the issues being reviewed on appeal. This process is not required for a statement of reasons. [¶] The distinction between a statement of decision and a statement of reasons is more than semantic and should be maintained. There are both substantive differences and a difference in purpose between the two. A statement of decision is of greater legal import, for it provides the framework within which a trial court's decision can be reviewed by the appellate court." (*Buser, supra,* 190 Cal.App.3d at pp. 642–643, italics added.)

Here, the trial court's order of July 7, 2014, awarding custody to father expressly "adopted" the June 25, 2014 recommendations in the FCS report. Those recommendations were attached, verbatim, to the subsequent formal order entered September 30, 2014. The FCS recommendations were based in large part on mother's efforts to thwart father's visitation and relationship with the children.

The court's October 2014 order denying reconsideration must be read in this historical context. The court's reference to mother's "current unwillingness to place the interest of the children above her animosity toward father" obviously refers to mother's defiance of father's visitation rights and her attempts to undermine his relationships with his children. As such, the order constitutes an adequate statement of reasons.

DISPOSITION

The orders are affirmed.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.

24