Filed 9/16/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| C.C.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>D.V.,<br><br>    Defendant and Respondent. | A168514, A169350<br><br>(Marin County<br>Super. Ct. Nos. FL 2200215,<br>FL 1403102) |

Family Code section 3044 creates a rebuttable presumption "that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child." (Fam. Code, § 3044, subd. (a); undesignated statutory references are to this code.)  The presumption arises upon a trial court finding "that a party seeking custody of a child has perpetrated domestic violence within the previous five years against" — amongst other people — "the other party seeking custody of the child." (*Ibid.*)  Then, before it can award sole or joint physical or legal custody to the perpetrator, the court must explicitly find the presumption has been rebutted. (*Id.*, subds. (b), (f)–(g).)

In 2022, C.C. sought a domestic violence restraining order (DVRO) against D.V.  In April 2023, pursuant to the parties' stipulation, the trial court issued a one-year restraining order after hearing (ROAH).  The ROAH did not address custody — the court earlier had awarded joint legal and physical custody — and the court did not mention section 3044.  In July 2023, after C.C. filed a request for an order modifying custody and visitation, the

1

court ordered the parties to "continue to share custody." Again, it did not address section 3044 before issuing its order.

C.C. appeals from both orders, arguing the trial court prejudicially erred by awarding joint custody without determining D.V. had overcome the presumption in section 3044. We agree. We hold that the presumption in section 3044 is triggered whenever an ROAH issues — even when it's the product of a stipulation. (§ 3044, subd. (a).) A contrary conclusion would undermine the Legislature's purpose in enacting the statute. But with regard to the ROAH, we cannot conclude the court erred by failing to modify existing custody orders on its own accord. The stipulated ROAH was silent as to custody, which was being addressed separately at the parties' request. We reach a different conclusion, however, regarding the court's treatment of C.C.'s subsequent request to modify custody and visitation. Given the ROAH, the court was required to find the presumption had been overcome *before* awarding joint custody. (*Id.*, subd. (g).) The court did not do so, and we cannot conclude it would have issued the same orders had it followed the law.

As the parties agree, subsequent proceedings have rendered moot the custody issues in this case. But this matter presents a significant issue, which is capable of repetition yet evading review. Moreover, the parties may continue to seek custody modifications until the children turn 18 years old, so our resolution of the issues " 'is likely to affect the future rights of the parties before us.' " (*In re Marriage of Abernethy* (1992) 5 Cal.App.4th 1193, 1197.) Accordingly, we retain the appeals, resolve the legal issue, and reverse the court's July 2023 order awarding joint custody. (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 419–420.)

## BACKGROUND

C.C. and D.V. used to date, and they had two children together.  In 2016, custody and visitation orders were issued in a parentage matter, with the parties sharing joint legal and physical custody.

In January 2022, C.C. sought a DVRO against D.V.  Attached to the request were her declaration and 37 exhibits — consisting of text messages, e-mails, and images — totaling approximately 100 pages.  Briefly, she alleged persistent harassment.  She said D.V. repeatedly sent her sexually explicit photos and images — including nude images of her, images of his genitals, and images of the two of them having sex — despite her pleas that he stop.  She also said he engaged in unwanted sexual touching at custodial exchanges.  Finally, she reported ongoing verbal abuse — often in crude and sexual terms — via text message and e-mail.  Once, he allegedly texted her a nude image of herself and called her "a horrible fucking human being."  Another time, he texted her she was "Heartless. [¶] Cruel. [¶] Mean [¶] Vindictive."  In an October 2021 e-mail — titled "Shitty human" — he wrote, "You are not a good human being in any way shape or form.  Your characteristics are all negative and the way you teach your kids is disgusting.  Great tits though."[1]  Among other requested orders, C.C. asked the trial court to include the children as additional protected parties and modify the existing custody and visitation orders.

The next day, the trial court issued a temporary restraining order (TRO) granting C.C.'s requested orders — including awarding her sole legal and primary physical custody of the kids — and scheduled a hearing three

---

[1] We do not recount all of C.C.'s allegations, many of which appear to be corroborated by her exhibits; nearly all occurred in the six months preceding the DVRO request.

weeks hence.[2]  The parties later stipulated to continue the DVRO hearing to January 2023, with the TRO remaining in place.  At the request of the parties, the court also consolidated the matter with the parentage case, referred the parties to Family Court Services, and scheduled a hearing in May 2022 to review custody.  After hearings in May and June 2022, the court modified timeshare but kept sole legal and primary physical custody with C.C.  It set a further review hearing in August 2022.

At the August 2022 hearing, the trial court heard arguments of counsel and invited the parties to submit declarations containing their "requested [timeshare] schedule."  (Capitalization omitted.)  In his, D.V. requested equal parenting time.  In hers, C.C. reminded the court there was a pending DVRO request, invoked section 3044, asked the court to "review [her DVRO] application" before "making any further custody orders," and alleged D.V. repeatedly violated the TRO.  She also asked to retain primary physical custody.  Neither party mentioned — or asked the court to change — legal custody.

In its September 2022 order, the trial court acknowledged C.C. had filed a DVRO request, and the court expressed concern about D.V.'s behavior. Nonetheless, noting the public policy of California is to ensure children have frequent and continuing contact with both parents (§ 3020, subd. (b)), it ordered joint legal custody.  The court temporarily kept primary physical custody with C.C. but ordered D.V. would receive equal parenting time once he attended six therapy sessions.  Despite C.C. having cited it in her

_____

[2] In addition to C.C. and the children, the TRO included I.C. — C.C.'s child from a previous relationship — as a protected party.

declaration, the court's order did not address section 3044.[3]

C.C.'s DVRO request was ultimately resolved in April 2023. At the hearing, the parties stipulated to a one-year ROAH. After examining the parties, the trial court approved their agreement and issued an ROAH. The ROAH protected only C.C. and I.C., and it did not include custody and visitation orders. At the hearing, D.V.'s counsel indicated the existing joint custody order "is not at issue today," and C.C. — representing herself — did not disagree. The court reviewed the ROAH provisions with the parties but did not mention section 3044. In June 2023, C.C. filed a notice of appeal from the ROAH.

In May 2023, C.C. filed a request for order that, among other things, sought to modify the September 2022 custody and visitation order. Alleging various troubling incidents, she asked the court to award her sole legal and primary physical custody.[4] At the hearing on C.C.'s request, the trial court expressed concern "with father's actions," issued some orders to address his conduct, referred the parties to Family Court Services, and continued the

---

[3] No one appealed from the September 2022 order, but it bears observing section 3044 apparently applied. (*Id.*, subd. (g) [at hearing "in which custody orders are sought and where there has been an allegation of domestic violence, the court shall make a determination as to whether this section applies prior to issuing a custody order"].) Moreover, section 3044 makes clear that "the preference for frequent and continuing contact with both parents" cannot rebut the presumption. (*Id.*, subd. (b)(1).)

[4] Among C.C.'s allegations were that D.V. sent text messages to their 13-year-old son's friends in which he called C.C. "a fucking monster" and said, "Fuck that bitch," while instructing his son's friends to "Erase this text." She also alleged he drove approximately 100 miles per hour with their children and five of their son's friends in the car, prompting a school administrator from their son's school to contact C.C. D.V. minimized his unsafe conduct in texts to his son's friends. Attached exhibits corroborate these allegations.

hearing to July 2023.  (Capitalization omitted.)  At the July hearing, the court considered the parties' arguments and took the matter under submission.  The same day, the court issued its ruling and an order providing that the parties were to "continue to share custody of their children," but it modified timeshare such that C.C. effectively had primary physical custody.  The court did not address section 3044 at the hearing or in its order, and it did not modify its existing order of joint legal custody.  In September 2023, C.C. filed a notice of appeal from the court's July order.

While these appeals were pending, the trial court continued to conduct hearings concerning custody and visitation.  Both parties draw our attention to a July 2024 hearing and order.  The hearing addressed D.V.'s request for an order finding he had rebutted the section 3044 presumption.  During the hearing, the court noted a one-year ROAH had been issued, but said "there [hadn't] been a finding made in that case."  It nonetheless went on to assess the factors in section 3044 and determined — by a preponderance of the evidence — that D.V. rebutted the presumption and "that it is in the best interests of the children for [D.V.] to continue to share joint legal and physical custody with [C.C.]."[5]

### DISCUSSION

In what she describes as an issue of first impression, C.C. contends the trial court's issuance of a stipulated ROAH constituted a "finding" that D.V. had "perpetrated domestic violence" against her within the previous five

---

[5] On July 22, 2024, D.V. filed a motion to dismiss these appeals as moot.  We address his motion below.  He also asks us to take judicial notice of (1) the trial court's findings and order after hearing, filed July 10, 2024, and (2) the reporter's transcript of the July hearing.  We grant his unopposed judicial notice request.  (Evid. Code, § 452, subd. (d) [records of any court of this state]; *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 734, fn. 2 [taking judicial notice of reporter's transcript].)

years and triggered the presumption against an award of sole or joint physical or legal custody to him. (§ 3044, subd. (a).) She further argues the court prejudicially erred by failing to explicitly determine that the presumption had been overcome before awarding joint custody. We agree as to her first point and conclude the court prejudicially erred by not determining the presumption was overcome before awarding joint custody in July 2023.

## I.

At the outset, D.V. asks us to dismiss the appeals as moot in light of the trial court's July 2024 determination that he rebutted the presumption in section 3044. For her part, C.C. concedes her appeals are "technically" moot but urges us to retain the appeals. She argues the issue in this case is of broad importance, is likely to recur, and is capable of evading review. She also argues that our resolution of the issue is of continuing importance to the parties given the potential of future custody proceedings. Moreover, she notes that, even in the July 2024 hearing, the court appeared to believe no "finding" had been made in the DVRO matter and suggests that belief might have affected the court's section 3044 analysis.

"A question becomes moot when, pending an appeal from a judgment of a trial court, events transpire that prevent the appellate court from granting any effectual relief." (*Gonzalez v. Munoz, supra*, 156 Cal.App.4th at p. 419.) "Nonetheless, ' " '[i]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot.' " ' " (*Ibid.*) "Moreover, the prospect of future modification proceedings . . . exists until [a] child reaches the age of majority. Resolution of an issue before the court 'is particularly appropriate

7

when it is likely to affect the future rights of the parties before us.' " (*In re Marriage of Abernethy*, *supra*, 5 Cal.App.4th at p. 1197.) We deny D.V.'s request to dismiss these appeals and instead exercise our discretion to resolve the issue.

## II.

We review custody and visitation orders for abuse of discretion. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) An abuse of discretion occurs if the trial court "applies improper criteria or makes incorrect legal assumptions." (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497, italics omitted; *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 116 [court fails to properly exercise discretion when unaware of the full scope of its discretion].) We independently review issues of statutory interpretation and whether the court " 'applied the correct legal standard to an issue in exercising its discretion.' " (*F.M.*, at p. 116; *Jaime G. v. H.L.* (2018) 25 Cal.App.5th 794, 805.)

"Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child . . . , there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to [the perpetrator] is detrimental to the best interest of the child." (§ 3044, subd. (a).) The presumption is overcome only if the trial court finds by a preponderance of the evidence that (1) "giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child," and (2) specified factors, on balance, support legislative findings concerning the physical and legal custody of children. (*Id.*, subds. (a)–(b), §§ 3011, 3020.) The court must "make specific findings on each of the factors" and — if it determines the perpetrator has overcome the presumption — it must "state

8

its reasons in writing or on the record." (§ 3044, subd. (f).)

We first resolve a question of statutory interpretation. When a trial court issues an ROAH pursuant to a stipulation, has the court thereby made a "finding" that the restrained party "perpetrated domestic violence" such that the presumption in section 3044 arises? Plainly, yes. A trial court may issue an ROAH only if "an affidavit or testimony and any additional information provided to the court pursuant to Section 6306, shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a); *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264.) Here, had the court not been satisfied there was reasonable proof of abuse — notwithstanding the parties' stipulation — issuing the ROAH would have been an abuse of discretion. (*S.M.*, at p. 1266.) Put another way, issuing the ROAH constituted a judicial finding that D.V. had perpetrated domestic abuse. (*Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 737 [issuance of ROAH necessarily entails judicial findings]; *Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 196 (*Abdelqader*).)

And the parties' stipulation provided sufficient proof of a past act of abuse. (*T & O Mobile Homes, Inc. v. United California Bank* (1985) 40 Cal.3d 441, 451, fn. 11 [" 'When parties have entered into stipulations as to material facts, [the court's] duty is to treat such facts as having been established by the clearest proof' "].) By stipulating to the issuance of a one-year ROAH, the parties effectively agreed D.V. had committed an act of domestic violence and — having accepted their stipulation and issued the ROAH — the court necessarily found likewise. (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 665 [stipulation constitutes a judicial determination].) That finding, in turn, triggered the presumption in section 3044. (*Abdelqader, supra*, 76 Cal.App.5th at p. 196.) Indeed, D.V. does not

9

argue to the contrary.

A contrary interpretation would be at odds with the legislative purpose underlying section 3044.  The Legislature's intent was "to move family courts, in making custody determinations, to consider properly and to give heavier weight to the existence of domestic violence." (*Jaime G. v. H.L.*, *supra*, 25 Cal.App.5th at p. 805.)  "Presumptions are used in this context because courts have historically failed to take sufficiently seriously evidence of domestic abuse." (*Id.* at p. 806.)  Requiring judges to state their reasons on the record if they've determined the presumption has been overcome is particularly important "to facilitate appellate review, as well as to inform the parties and ensure consideration of the proper factors in the first instance." (*City and County of San Francisco v. H.H.* (2022) 76 Cal.App.5th 531, 546.)  Allowing individuals to evade section 3044's safeguards by stipulating to an ROAH and then arguing no finding of domestic violence was ever made would undermine important public policy.

We turn to consider whether the trial court violated section 3044 when it issued the ROAH in April 2023 or when it ruled on C.C.'s request to modify custody and visitation three months later.  Starting with the ROAH, no error appears.  Section 3044 applies when custody orders are sought and issued. (§ 3044, subd. (g).)  But pursuant to the parties' stipulation, the ROAH did not contain any custody orders.  Moreover, at the hearing, D.V.'s counsel indicated the existing joint custody order was "not at issue today," and C.C. did not indicate otherwise.

C.C. now contends custody *was* at issue, pointing to the fact that her original DVRO request sought custody orders.  We disagree.  The parties previously stipulated to extend the TRO for one year and to separately address custody while the TRO was pending.  Indeed, the court conducted

10

various hearings concerning custody and timeshare after which it issued orders addressing the issue. Given this context — i.e., the parties' request to separately address custody, their affirmative representation that custody was not at issue at the DVRO hearing, and their stipulation's silence concerning custody — the court did not err by not adjusting its existing custody orders on its own motion.

We reach a different conclusion with regard to the trial court's July 2023 custody order. That order addressed C.C.'s request to modify the September 2022 custody order, which awarded joint legal and physical custody.[6] When the court issued its custody order in July — as previously discussed — it had already issued an ROAH and thus found D.V. had perpetrated domestic violence. Accordingly, the court was required to determine D.V. had overcome the presumption in section 3044 before issuing an award of joint custody. (§ 3044, subd. (a); *Abdelqader*, *supra*, 76 Cal.App.5th at pp. 196–197.) It did not.

In resisting this conclusion, D.V. makes various arguments. We find none persuasive. First, he argues the trial court's July 2023 order did not violate section 3044 because it was a "de facto grant" of sole physical custody to C.C. While he is correct that the ordered timeshare gave primary physical custody of the children to C.C., he ignores the fact that the court maintained its existing order of joint *legal* custody. Absent a finding that D.V. rebutted the presumption, that order was erroneous. (§ 3044, subd. (a).) Next, he contends any error was harmless because the record contains sufficient

---

[6] As previously mentioned, no one appealed from the September 2022 order. As such, we have no occasion to express an opinion about the propriety of the trial court's award of joint legal and physical custody without first determining that D.V. had overcome the presumption in section 3044. (§ 3044, subds. (a)–(c), (e)–(g).)

evidence to determine D.V. rebutted the presumption. Given section 3044's command that a court state its reasons on the record when it determines a perpetrator of domestic violence has rebutted the presumption, we will not imply findings. (*Abdelqader*, *supra*, 76 Cal.App.5th at pp. 197–198.) Nor will we conduct a section 3044 analysis in the first instance. (*Jaime G. v. H.L.*, *supra*, 25 CalApp.5th at p. 809 [remanding for a new hearing].)

To sum up, when a trial court accepts a stipulation and issues an ROAH, it has made a judicial finding that the restrained party perpetrated domestic violence. The presumption in section 3044 is thereby triggered, and the court must determine — putting its findings on the record — the presumption has been overcome before it can award sole or joint legal or physical custody to the perpetrator.

## DISPOSITION

The trial court's order, filed April 21, 2023, is affirmed. The court's order, filed July 25, 2023, is reversed. Because subsequent legal proceedings have rendered the challenge to the July 25, 2023 order moot, no further action need be taken in this matter by the trial court. C.C. is entitled to her costs on appeal. (Cal. Rules of Court, rule 8.278 (a).)

12

_____
RODRÍGUEZ, J.

WE CONCUR:

_____
TUCHER, P. J.

_____
FUJISAKI, J.

A168514 & A169350; *C.C. v. D.V.*

Marin County Superior Court, Hon. Sheila Shah Liechtblau.

Family Violence Appellate Project, Shuray Ghorishi, Cory Hernandez and Jennafer Dorfman Wagner; Jones Day, Craig E. Stewart and Abigail H. Shim for Plaintiff and Appellant.

Bay Area Legal Aid, Erin Orum and Brenda Star Adams as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Office of Matthew A. Siroka and Matthew A. Siroka for Defendant and Respondent.