Filed 6/12/24  Sweezey v. Virelas CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MELISSA SWEEZEY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTONIO VIRELAS,<br><br>    Defendant and Appellant. | A164089<br><br>(Contra Costa County<br>Super. Ct. No. D20-00658) |

In April 2023, we affirmed a domestic violence protective order (DVRO) against Antonio Virelas.  (*Sweezey v. Virelas* (April 27, 2023, A162141 [nonpub. opn.]) (*Sweezey I*).)[1]  The DVRO issued upon the trial court's finding that Virelas had committed various acts of domestic violence against his former girlfriend, Melissa Sweezey.

Virelas now appeals the trial court's subsequent custody and visitation order giving Sweezey sole legal and physical custody of Virelas's and Sweezey's minor daughter (child), allowing Virelas certain visitation rights, and ordering that he successfully complete a 52-week batterer intervention

---

[1] We take judicial notice of our prior opinion under Evidence Code sections 459 and 451, subdivision (a).

1

program, after which the court would consider expanding his visitation rights.

The court based this custody and visitation order on its finding that Virelas did not rebut the mandatory presumption in Family Code section 3044[2] that, due to the previous judicial finding of his acts of domestic violence against Sweezey, it was not in the child's best interest for him to have joint or sole custody of the child.

Virelas challenges the court's order on numerous grounds, contending that "[t]he substantial and overwhelming evidence regarding the child's best interest [is] for the child to have been in father's care with visitations to the mother."

We conclude that Virelas fails to meet his appellate burden to show error. The trial court's finding that he did not rebut the section 3044 presumption is amply supported by his refusal to take responsibility for his acts of domestic violence. Seeing no abuse of discretion, we affirm.

## I. BACKGROUND

In February 2020, Sweezey filed a request for a DVRO against Virelas. She alleged they had had a long-term relationship, lived together, and parented an 11-year-old daughter. Among Sweezey's allegations were that Virelas had repeatedly raped and verbally abused her. She sought an order that Virelas move out and stay away from her and the child, that gave her sole possession and care of two dogs, and that established child custody and visitation rights. The court issued a temporary restraining order against Virelas and scheduled a hearing to consider a permanent order.

---

[2] Undesignated statutory references are to the Family Code.

Virelas opposed Sweezey's request, and in October 2020 also requested ex parte an emergency order giving him temporary sole custody of the child. Among his allegations were that the child had expressed concern about violence that was occurring between Sweezey and her boyfriend in the home, and that the child wanted to live with him. The court denied Virelas's ex parte request pending a hearing.

The court held a hearing in January 2021 to consider both Sweezey's and Virelas's requests. After the hearing, the court issued a one-year DVRO against Virelas, ordered that Sweezey have legal and physical custody of the child until further hearing, allowed Virelas weekend visitations with the child on the first, third, and fifth weekends of the month, and ordered that Sweezey have sole possession, care, and control of the two dogs. It stated that it did not believe the child was in physical or emotional danger when she was with Virelas, and declined to rule further on child custody and visitation rights, instead ordering the parties to attend Tier II mediation for the interview of the child.

Virelas appealed the court's DVRO to this court. In *Sweezey I*, we affirmed the DVRO. (*Sweezey I*, *supra*, A162141.) As our summary of the case background in that opinion indicates, at the January 2021 hearing, the trial court found that third-party witnesses, which included at least one who testified about aggressive behavior by Virelas, were "credible for the most part," and that Sweezey and Virelas were " 'moderately credible but not beyond.' " (*Ibid*.) The court found that Sweezey had not shown by a preponderance of the evidence that Virelas had raped her, although it still had a reasonable suspicion that the intercourse was accomplished by means of force or duress, and that Sweezey also failed to show by a preponderance of the evidence a number of her other allegations. (*Ibid*.)

3

But the court also found that Virelas " 'was a domineering father trying . . . to make his daughter . . . excel at anything that she had, sometimes maybe pushing a little far . . . .' " (*Sweezey I*, *supra*, A162141)  It found that Sweezey proved by a preponderance of the evidence that, first, Virelas " '[r]epeatedly call[ed] her a "stupid fucking bitch," ' " and that " 'domineering and abusive language did happen' "; second, " '[i]n January 2020, [Sweezey] attempted to leave a room in their home, and [Virelas] physically prevented her from leaving the room' "; and third, " '[Virelas] has a domineering personality and made unreasonable efforts to control [Sweezey's] behavior.' " (*Ibid.*)  The court concluded, " 'The combination of the domineering personality, the abusive language, and this brief false imprisonment, although I do find it to be very brief, when these things are combined, they are sufficient to meet the definition of disturbing the peace' " under section 6320.[3]  (*Ibid.*)

As for the custody proceedings below, in April 2021, family court services filed a confidential report with the court regarding its interview with the child.  The report indicated the child enjoyed herself with both her mother and her father, did not feel safe with her mother when her mother yelled at her, denied feeling unsafe with her father, acknowledged that in the

---

[3] "Abuse" under the Domestic Violence Prevention Act includes, among other things, placing a person in "reasonable apprehension of imminent serious bodily injury" or any behavior that could be enjoined under section 6320, including "disturbing the peace of the other party."  (§§ 6203, subd. (a)(3), (4), 6320, subd. (a).)  " '[D]isturbing the peace of the other party' refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party," whether directly or indirectly.  (§ 6320, sub. (c).)  "This conduct includes, but is not limited to, coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty."  (*Ibid.*)

past he had yelled at her when she had not completed her homework, and said she wanted to spend more time with him.

In May 2021, the court held a further hearing regarding custody and visitation rights regarding the child. At the conclusion of the hearing, the trial court granted Sweezey sole legal and physical custody of the child. Among other things, it ordered that Virelas have visitation rights with the child on the first and third weekend of the month, along with a visitation right on Wednesday after 3:30 p.m. The court expressly declined to order that Virelas have visitation rights on the fifth weekend of the month and have "week on/week off" visitation rights during the summer until he completed a 52-week batterer intervention program because it had "great concerns about [the child] spending that much time with Mr. Virelas until he changes his pattern of behavior . . . ." The court also ruled that Virelas could not travel out of the country with the child without an agreement with Sweezey or an order of the court.

A day after the hearing, the trial court issued its written findings and order after hearing (FOAH). The FOAH differed from the court's oral ruling at the conclusion of the hearing in that the court ordered that Virelas, after he successfully completed 20 weeks of a 52-week batterer intervention program, would have unsupervised visitation rights, including on the fifth weekend of the month, and week on/week off visitation rights during the summer. The court further ordered that Virelas could not vacation with the child outside of the State of California or the United States without prior written consent of Sweezey or court order.

A little over a month later, the trial issued an "Amended" FOAH. There is no indication in the record why the court issued this Amended FOAH. The Amended FOAH differed from the original FOAH in that the

5

court ordered that Virelas, after he successfully completed the *entire* 52-week batter intervention program, would have unsupervised visitation rights, including on the fifth weekend of the month. The Amended FOAH did not address Virelas's summer visitation rights. The court also deleted a provision in the original FOAH that was requested by Sweezey's counsel at the hearing, which stated, "The minor child shall have her cell phone at all times and parents shall be able to communicate with the minor child at all reasonable times. When the minor child is in Father's custody the GPS location services shall be enabled and shall not be turned off."

Virelas filed a timely notice of appeal.

## II. DISCUSSION

### A. *Virelas's Burden as the Appellant*

Both Virelas and Sweezey represent themselves in this appeal. A party acting in propria persona is subject to the same rules on appeal as one represented by counsel. (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 628; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.) Neither Virelas nor Sweezey present reasoned legal argument supported by adequate citations to the record. However, we focus on Virelas's presentation because, as appellant, he bears the burden of affirmatively showing error.

"On appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]" (*People v. Giordano* (2007) 42 Cal.4th 644, 666 (*Giordano*).) Since the appealing party must affirmatively show error, that party must "provide citations to the appellate record directing the court to the evidence supporting each factual assertion." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 (*Meridian Financial Services,*

6

*Inc.*).)  Also, " '[a]ppellate briefs must provide argument and legal authority for the positions taken.  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*).)

In other words, the appellant "has the burden of persuasion; '[o]ne cannot simply say the court erred, and leave it up to the appellate court to figure out why.' " (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1237.)  "The reviewing court is not required to develop the parties' arguments or search the record for supporting evidence and may instead treat arguments that are not developed or supported by adequate citations to the record as waived." (*Meridian Financial Services, Inc.*, *supra*, 67 Cal.App.5th at p. 684.)

Virelas's sincere desire to have more time with his daughter was evident at oral argument, but his briefs are devoid of discernible legal reasoning.  Raising issues in a cursory, scattershot, and repetitive fashion, he often fails to cite the record or any legal authority, and repeatedly refers to events and circumstances that are plainly outside the record.  Many of his contentions appear to assume that an appellate court can simply disagree with a trial court's credibility assessments, but here, of course, he labors under a basic misunderstanding of our role on appeal.  We may substitute our judgment for that of the trial court only on issues of law.  On factual issues, the applicable standard of review requires us to defer to the trial court's findings if there is substantial record evidence to support them.

To the extent Virelas cites legal authority for asserted errors of law, he does not discuss that authority in a reasoned way.  He also cites authority that has nothing to do with his circumstances, such as anti-SLAPP law.  We

7

will not develop Virelas's argument for him or guess at what legal arguments he might have intended to make. Because he fails to present comprehensible legal argument, appropriately supported by legal authority, Virelas waived any claim that the trial court committed legal error. (*Meridian Financial Services, Inc.*, *supra*, 67 Cal.App.5th at p. 684; *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

That said, we will briefly discuss further some of the issues that Virelas raises, to the extent they are discernible, since some are intertwined with various claims about the facts and amount to contentions that the trial court either abused its discretion or made factual findings that are unsupported by the record. We reject those claims for the reasons explained below.

## B. *Standard of Review*

"We review custody and visitation orders for an abuse of discretion, and [we] apply the substantial evidence standard to the court's factual findings." (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497.) "The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.) A court abuses its discretion in making a child custody order if there is no reasonable basis on which it could conclude that its decision advances the best interest of the child, or if it applies improper criteria or makes incorrect legal assumptions. (*In re Marriage of Fajota*, at p. 1497.)

## C. *No Abuse of Discretion*

Virelas argues the trial court abused its discretion by disregarding evidence, aspects of the DVRO court's findings, and various Family Code statutes. He fails to provide any support in the record for this argument, which he appears to base on nothing more than that the trial court rejected his positions on various matters.

8

In any event, the record shows the trial court *did* consider all of the materials presented and matters raised by the parties. The court stated at the beginning of the hearing on the custody order, "I did review the file. I did see that there was a restraining order that was granted by [the court]. I also see that the parties have attended Tier I meditation, as well as the minor child had attended Tier II mediation, and I did read that report, as well as all of the documents in the file, including the memorandum of points and authorities in response to Respondent's supplemental declaration in support of request for order." There is also no indication in the record that the trial court disregarded any law. Virelas's abuse of discretion claim is without merit.

### D. *The Court's Order That Sweezey Have Sole Custody of the Child Because Virelas Did Not Rebut the Section 3044 Presumption*

Next, Virelas makes a number of arguments challenging the court's decision to award sole legal and physical custody of the child to Sweezey. Essentially, he argues it was in the child's best interest for him to have sole custody, or at least increased visitation, with the child based on his contentions that he took good care of the child, that he did not commit acts of domestic violence, which Sweezey had lied about, that the child was unhappy living with Sweezey, and that Sweezey neglected the child's care and had exposed her in 2020 to violence in the home between Sweezey and her then-boyfriend. Virelas's arguments fail in light of his failure to rebut the mandatory section 3044 presumption that, because of the previous judicial finding that he had committed acts of domestic violence against Sweezey, it was not in the child's best interest for him to have sole or joint custody of her.

"The guiding principle for the court in making any custody or visitation order is that the order must be in the child's best interest. (See §§ 3011, 3020, 3040.)" (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 661 (*Celia S.*).)

9

The Legislature has declared that "it is the public policy of this state to ensure that the health, safety, and welfare of children shall be the court's primary concern in determining the best interests of children when making any orders regarding the physical or legal custody or visitation of children[,]" that "children have the right to be safe and free from abuse, and that the perpetration of child abuse or domestic violence in a household where a child resides is detrimental to the health, safety, and welfare of the child."  (§ 3020, subd. (a).)

After a break-up between parents, "it is the public policy of this state to ensure that children have frequent and continuing contact with both parents . . . , and to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy, except when the contact would not be in the best interests of the child . . . ."  (§ 3020, subd. (b).)  In determining these best interests, the court is to consider "[a] history of abuse by one parent . . . against . . . [¶] [t]he other parent."  (§ 3011, subd. (a)(2)(A)(ii); § 3044, subd. (b).)

Consistent with these provisions, the Legislature has established in section 3044 a rebuttable presumption that awarding physical or legal custody to a parent who has committed domestic violence is detrimental to a child's best interest.  The Fourth Appellate District has neatly summarized the law regarding this presumption:  " 'Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against the other party seeking custody of the child . . . within the previous five years, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . .'  (§ 3044, subd. (a).)

10

"This presumption is mandatory and the trial court has no discretion in deciding whether to apply it: '[T]he court *must* apply the presumption in any situation in which a finding of domestic violence has been made. A court may not " 'call . . . into play' the presumption contained in section 3044 only when the court believes it is appropriate." ' (*In re Marriage of Fajota*[, *supra*,] 230 Cal.App.4th [at p.] 1498 []; see *Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 736 (*Christina L.*) [' "Because a [Domestic Violence Prevention Act] (DVPA) restraining order must be based on a finding that the party being restrained committed one or more acts of domestic abuse, a finding of domestic abuse sufficient to support a DVPA restraining order necessarily triggers the presumption in section 3044" '].)"[4] (*Celia S.*, *supra*, 3 Cal.App.5th at pp. 661–662.)

As noted, "[t]he section 3044 presumption is rebuttable and ' "may be overcome by a preponderance of the evidence showing that it is in the child's

[4] Section 3044 establishes the following nonexclusive list of factors for the trial court to consider in determining whether the presumption has been overcome: "(1) The perpetrator of domestic violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child . . . . [¶] (2) (A) The perpetrator has successfully completed a batterer's treatment program . . . . [¶] (B) The perpetrator has successfully completed a program of alcohol or drug abuse counseling, if the court determines that counseling is appropriate. [¶] (C) The perpetrator has successfully completed a parenting class, if the court determines the class to be appropriate. [¶] (D) The perpetrator is on probation or parole, and has or has not complied with the terms and conditions of probation or parole. [¶] (E) The perpetrator is restrained by a protective order or restraining order, and has or has not complied with its terms and conditions. [¶] (F) The perpetrator of domestic violence has committed further acts of domestic violence.' [¶] [and] (G) The court has determined . . . that the perpetrator is a restrained person in possession or control of a firearm or ammunition in violation of Section 6389." (§ 3044, subd. (b); see *Celia S.*, *supra*, 3 Cal.App.5th at p. 662, fn. 3.)

11

best interest to grant joint or sole custody to the offending parent." '
(*Christina L.*, *supra*, 229 Cal.App.4th at p. 736; see § 3044, subd. (a) ['This
presumption may only be rebutted by a preponderance of the evidence'];
[citation].)  The legal effect of the presumption is to shift the burden of
persuasion on the best interest question to the parent who the court found
committed domestic violence.  (*Christina L.*, at p. 736.)

"Section 3044 also prohibits the parent who committed domestic
violence from using the statutory preference for frequent and continuing
contact with both parents to rebut the presumption, 'in whole or in part.'
(§ 3044, subd. (b)(1); [citation].)"  (*Celia S.*, *supra*, 3 Cal.App.5th at pp. 661–
662, fn. omitted.)

Here, the trial court properly analyzed Virelas's arguments by applying
section 3044's mandatory, rebuttable presumption that it was not in the
child's best interest for Virelas to have sole or joint custody of her because of
the DVRO finding that Virelas had committed domestic violence under
section 6320, which led to the court's issuance of a one-year DVRO about five
months before the custody hearing (after issuing a temporary restraining
order the previous year).  The trial court concluded that Virelas had not
rebutted the section 3044 presumption against his obtaining sole or joint
custody of the child, including because he had contended in the custody
proceedings that section 3044 did not even apply and argued against the
factual findings underlying the DVRO, which caused the court "some
distress."  The court concluded that there was "no way" Virelas had rebutted
section 3044 in light of his failure to take responsibility for his acts of
domestic violence and his blaming Sweezey instead.

Virelas does not address the court's concern that he failed to take
responsibility for his acts of domestic violence.  Instead, he argues that he

12

overcame the presumption, emphasizing that there is no record that he has violated the DVRO, committed any acts of domestic violence, or been indicted or convicted of any violent felonies or misdemeanor acts.

Virelas's presentation to the trial court confirmed his refusal to take responsibility for his acts of domestic violence. Rather than acknowledge these acts, he insisted on relitigating the DVRO proceeding and blaming Sweezey for any and all things in dispute. For example, he contended that the DVRO court "gave [Sweezey] a late Christmas present, . . . which was based on—mostly on verbal abuse, and [Sweezey] knows very well that it has been the other way around," and suggested that the court call the child to testify because she would say "who really was the . . . abuser and the verbal abuser there." He claimed he had rebutted the section 3044 presumption because, he said, "I have not committed domestic violence, and this is the reason why: It is under review in the appeal courts as we speak" (meaning *Sweezey I*).

Virelas apparently expects us to credit his version of the events that led to the DVRO proceedings and to reject Sweezey's, which the DVRO court accepted. He contends Sweezey had "knowingly made" "false" child abuse allegations against him, an apparent allusion to the DVRO court's conclusion in January 2021 that Sweezey did not prove certain of her allegations by a preponderance of the evidence. And he claims Sweezey had misrepresented in support of her DVRO request that he did not financially contribute to the household, said he wanted his dog back, and insisted that the court find Sweezey guilty of perjury and order sanctions against her for her supposed

13

lies in the DVRO proceeding. The facts that led to the issuance of the DVRO were resolved against Virelas and are not open to relitigation in this appeal. [5]

The record indicates the trial court was aware of and appropriately weighed considerations favoring Virelas's view that it is in his daughter's best interest to have more time with him, but still decided the evidence was insufficient to overcome the section 3044 presumption. For example, Virelas points to the family court services report, which indicates the child had fun and felt safe with him, and alludes to the court's finding that the child was not in physical or emotional danger when she was with Virelas. These matters were relevant to the court's custody and visitation inquiry. Indeed, it appears the court took them into account in granting Virelas visitation rights with the child and indicating it would consider increasing them significantly upon his completion of a 52-week batterer intervention program.

By failing to acknowledge the adverse findings of domestic violence made against him, by failing to demonstrate a willingness to change, and by instead attempting to portray Sweezey as dishonest and unable to provide a safe and healthy environment for their daughter, Virelas appears to have miscalculated what would be persuasive to the trial court. Even on appeal, Virelas continues to evade responsibility for his acts. He continues to rehash the events leading up to the DVRO proceedings and emphasizes certain

---

[5] Virelas contended in the trial court that the child was engaging in self-destructive behavior while in Sweezey's care, and even went further at oral argument, alluding to a suicide attempt by the child. No such episode is in the record so far as we can tell, With regard to alleged self-harm behavior by the child more generally, the court expressed concern that this might be the case but rejected Virelas's implication that such behavior was because of Sweezey rather than because Virelas was putting the child "smack in the middle of this litigation," such as by suggesting that she be called to testify about which parent engaged in abusive behavior.

aspects of the DVRO rulings without addressing the court's finding that he committed acts of domestic violence, a ruling that we affirmed in *Sweezey I*. Rather than take responsibility for those acts, he continues to attack Sweezey, emphasizing the family court services report and unauthenticated statements he submitted to the court in 2020 as part of his request for a temporary emergency custody order, purportedly written by the child, to argue that Sweezey did not take good care of the child.

In his zealous attempt to cast himself as the only one arguing in good faith, Virelas takes liberties with the record that are plainly contrary to what the record actually shows. For example, he contends the DVRO court found he did not need to attend a batterer intervention program; we have found no such determination in the record. His arguments on appeal only underline the reasonableness of the trial court's concern about his acts of domestic violence against Sweezey. Whether or not he exhibited such behavior towards the child, the court could be reasonably concerned that his pattern of domestic violence might extend to her in the future if he does not learn to better manage his behavior, including by successfully completing a 52-week batterer intervention program.

In short, under our abuse of discretion standard of review, the trial court was well within its discretion to find Virelas did not rebut the section 3044 presumption because of his continued denial of the validity of the DVRO court's finding that he perpetuated acts of domestic violence against Sweezey and his continued blaming of Sweezey. Accordingly, the court did not err in awarding sole legal and physical custody of the child to Sweezey, ordering that Virelas successfully complete a 52-week batterer intervention program, and making its visitation and other orders.

### E. *Virelas's Claims of Procedural Errors by the Court*

Virelas also contends the trial court made a number of prejudicial procedural errors. We reject all of these arguments.

First, Virelas complains that the trial court failed to hold an emergency court hearing in October 2020 when he sought an emergency custody order ex parte, the court choosing to conduct a hearing first, which it held in January 2021 and May 2021. Virelas does not meet his burden as appellant of affirmatively showing the court erred in its decision or that his rights were prejudiced in any way by the court's actions. Therefore, we reject this claim. (*Giordano*, *supra*, 42 Cal.4th at p. 666; *Meridian Financial Services, Inc.*, *supra*, 67 Cal.App.5th at p. 684.)

Next, Virelas contends the trial court committed prejudicial error by overruling his objection to Sweezey's purportedly late filing of a response to his request for custody of the child, which Sweezey filed shortly before the custody hearing. The trial court overruled Virelas's objection because, the court said, "I don't think there was anything in there that the court didn't already know, and there's certainly nothing in there that would prejudice you at this time." Virelas's claim of prejudicial error fails because he does not even try to show the court's conclusion of no prejudice was in error; he fails to cite any legal authority or even identify where in the record the filing might be located and, therefore, does not meet his burden as appellant of affirmatively showing error occurred. (*Giordano*, *supra*, 42 Cal.4th at p. 666; *Meridian Financial Services, Inc.*, *supra*, 67 Cal.App.5th at p. 684; *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)

Virelas also complains that during the custody hearing, in which he was participating remotely via Zoom, the trial court, after stating its orders, muted his microphone, thereby denying him the opportunity to speak, while it unmuted opposing counsel's microphone. But the record does not indicate

16

that he was muted or denied an opportunity to speak. To the contrary, the reporter's transcript of the hearing shows that the court inquired of both parties, and of Virelas specifically, whether they wished the court to clarify anything and does not indicate whether he made any response, after which the court unmuted opposing counsel's microphone. Once more, Virelas fails to meet his burden as appellant of affirmatively showing prejudicial error occurred. (*Giordano*, *supra*, 42 Cal.4th at p. 666.) Accordingly, we reject this claim also.

Finally, Virelas argues the trial court improperly issued its Amended FOAH, which, as we have discussed, contained certain changes from the original FOAH, without following the procedures required under Code of Civil Procedure section 1008 for reconsideration and amendment of a prior order. He contends the court did so after Sweezey's attorney emailed the court requesting this modification, but he does not cite to where in the record this request is indicated.

On the face of it, the trial court's Amended FOAH appears to simply correct its written order so as to make it consistent with its oral rulings at the hearing. This suggests the court intended to issue the Amended FOAH nunc pro tunc under its authority to correct clerical errors in the original FOAH. (See, e.g., *Chula v. Superior Court* (1962) 57 Cal.2d 199, 206 ["Where an order or judgment incorrectly records the completed judicial action of a court, the court can thereafter correct clerical errors by making an amendment to its order truly reflecting the court's action"]; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [a court has " 'the inherent power to correct clerical errors in its records so as to make these records reflect the true facts[,]' " whether " 'on its own motion or upon the application of the parties' "]; *Sannmann v. Department of Justice* (2020) 47 Cal.App.5th 676, 683 ["Trial

courts have the authority to enter nunc pro tunc orders to address *clerical* errors, but not *judicial* errors."].)

In any event, once more, Virelas does not meet his burden as appellant of affirmatively showing prejudicial error occurred.  (*Giordano*, *supra*, 42 Cal.4th at p. 666; *Meridian Financial Services, Inc.*, *supra*, 67 Cal.App.5th at p. 684; *Cahill*, *supra*, 194 Cal.App.4th at p. 956.)  Therefore, we reject this claim as well.

## III. DISPOSITION

The order appealed from is affirmed.  Sweezey shall recover her costs of appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

18